## FAIRCHILD *vs.* BENTLEY and SWEET.

To hold the owner of a dog liable for an injury committed by him, it must appear that the dog was vicious and the owner knew it, or that he was a trespasser, at the time of doing the injury. *Per* CAMPBELL, J.

If an individual knows that his dog is in the habit of following teams driven by such person, and of watching them after they are hitched and left by him ; and if he knows that such dog is accustomed to attack and bite strangers approaching teams so watched, he is liable for any injury done by the dog to a person lawfully approaching the team for the purpose of unhitching it. MASON, J., dissented.

A man owning such a dog, knowing its character, must secure it at home, so that it will not follow him. If it follows him, and bites a person rightfully coming to remove the team from an inn-shed where the owner has left it, and where the dog is watching it, such owner is liable in damages. MASON, J., dissented.

Whether, in such a case, a dog has a right to follow his master and lie down in the open shed of a public inn, or whether he is, *quoad* the master, an involuntary trespasser, the master is not liable, in an action of trespass, for the injury done by him, without proof of knowledge of his vicious habits. *Per* CAMPBELL, J.

THIS is an action on the case to recover damages for the bite of a dog. The cause was tried at the Cortland circuit, July, 1857, before Justice MASON, and a verdict rendered for the plaintiff against the defendant Bentley, for $50 damages. The defendant Sweet was acquitted on the trial, there being no evidence against him. The court ordered a stay of proceedings, and that the cause be heard in the first instance at general term. The plaintiff in his complaint, after setting forth that the dog attacked and bit him, proceeds to say: "And said plaintiff further alleges, that before, and at the time of the injury herein before alleged, *the said defendants well knew that the said dog was a fierce, ferocious and dangerous dog, and that he had* [attacked and bitten] *and was used and accustomed to attack and bite mankind."* The defendants answered, denying each and every allegation in the complaint. From the evidence it appeared that the dog belonged to Bentley, who lived about four miles from Cortland village, and that on the day of the accident the dog followed the sleigh in which Bentley rode, to the village. When he

---

Fairchild *v.* Bentley.

---

started, the dog followed him for a short distance, and he then got out and drove the dog back. He saw no more of the dog until after the accident. The person with whom Bentley rode, drove his sleigh into the yard of the Eagle Tavern and left it, having hitched the horses to a place pointed out by the hostler. The owner of the team, with Bentley, then went into the Eagle Tavern, where they purchased and paid for cigars and beer. After this they went about the village. It did not appear when the dog came to the village, but he was found soon after by the plaintiff (who was the son of the proprietor of the Eagle Tavern) watching the team. The horses being hitched near a wagon belonging to the plaintiff's father, they were found gnawing the end board, whereupon the plaintiff took hold of the horses' heads to back them away. The dog then jumped up and bit the plaintiff in the groin, which was the injury complained of. The dog appeared to have been irritated by boys throwing snow balls and other missiles at him. *There was no proof that the dog had ever bitten any person previous to this time, or that he was a savage or dangerous dog.* One witness testified that previous to the accident in question, he attempted to take hold of a team that the dog was watching, and that the dog growled. The defendant Bentley knew nothing against the character of the dog until he bit the plaintiff; and a witness for the plaintiff, at whose house the dog was kept, testified that she thought him a mild and peaceable dog. It was proved (under the defendant's objection) that in April after the accident in question, the dog bit a small boy who was passing near a barn where the dog was kept, and also that he jumped upon another person who came upon him suddenly, and that he snarled at the same man at another time.

The defendant Bentley, upon a case and exceptions, moved for a new trial.

*R. H. Duell,* for the defendant. I. The defendant is not liable as a trespasser, for the injury committed by his dog. (1.) The defendant was a guest of the innkeeper. (*McDonald*

v. *Edgerton,* 5 *Barb.* 560.) (2.) If the dog was trespassing at
the time, the defendant is not liable without proof of the
*scienter,* as the *plaintiff was not the owner of the close* and
cannot recover for any injury done to it. The cases where a
recovery has been had without proof of a *scienter, is where
the breaking and entering the close is the substantive allega-
tion, and the rest is laid as matter of aggravation merely.*
(*Van Leuven* v. *Lyke,* 1 *Comst.* 515, 517.) (3.) In the case
at bar, the liability of the defendant was not put upon the
ground of his being a trespasser, and therefore the point does
not arise here.

II. The judge erred in charging the jury that if the dog
was vicious and dangerous only to strangers passing by him
when watching a team, then the defendant was liable without
proof of the defendant's knowledge of the vicious and danger-
ous propensity of the dog. The law seems to be well settled,
both in our courts and in those of England, that as any per-
son may keep a domestic animal, the owner is only liable for
an injury it may do upon the ground of some actual or pre-
sumed negligence on his part. It is essential to the proof of
negligence that the owner be shown to have had notice of the
propensity of the animal to do mischief. Therefore in this
case, as the plaintiff gave no evidence that the defendant had
notice of the dog's propensity to do mischief, the action can-
not be sustained. (13 *John.* 339. 1 *Denio,* 495. 17 *Wend.*
496. 4 *Denio,* 500. 4 *Cowen,* 351. 4 *Denio,* 127. 1 *Coms.*
515. 4 *Denio,* 175. 13 *John.* 312. 23 *Barb.* 324.) In
England it has been held that an action for keeping a fero-
cious dog, which bit the plaintiff, (the defendant well knowing
the dog to be ferocious,) does not lie, unless the defendant
knew that the dog was accustomed to bite. (*Hogan* v. *Sharpe,*
7 *Car. & Payne,* 755. *Beck* v. *Dyson,* 4 *Camp.* 198. *Thomas*
v. *Morgan,* 2 *C., M. & R.* 496.) The judge at the circuit held,
in substance, that any person who keeps a watch dog that is
dangerous to strangers when watching, is liable for an injury
caused by the dog, although he has no notice that the dog was

dangerous to strangers while thus watching. With due respect to the decision of the learned justice, it is submitted that no case has yet gone that length. There is a class of cases holding that where an animal is by *nature* fierce and dangerous, as a lion, tiger and the like, the person who keeps him is liable for any damage he may do, upon the principle that such animals, being fierce by nature, *notice is presumed.* On the other hand, in the case of domestic animals not naturally inclined to do mischief, such as dogs, horses and the like, the owner must be shown to have had notice of their viciousness before he can be made liable for their injuries, (*per Jewett, J.,* 1 *Comst.* 516.) *In both cases notice is essential; but while in one case actual notice must be shown, in the other it is presumed.* The error complained of in this cause is in placing the owner of a dog, dangerous only to strangers while watching, upon the same level as the owner of a lion, tiger, or other animal *fierce by nature,* and in holding that neither actual or presumed notice was necessary to be shown in order to make the defendant liable. Had the judge assumed that proof of the vicious and dangerous character of the dog while watching, *was equivalent to express notice,* or if it shall be contended that such is the effect of his charge, then we say, that there is a distinction between the presumption arising from the proof that an animal is of a ferocious and dangerous *nature,* or in other words, *naturally* savage and dangerous, and that of the presumption arising from the proof that the dog had an acquired habit making him dangerous only in a particular position. A man may be presumed by a jury to know that an animal fierce by nature *is* a dangerous animal; but it would be violence to presume him to know that his domestic animal has a dangerous habit, especially if that particular habit is contrary to his nature.

III. For the reasons stated in the last point, the court erred in refusing to nonsuit the plaintiff, and in refusing to charge as requested.

IV. The court erred in refusing to charge the jury that they

Fairchild *v.* Bentley.

could only find the fact of the dog being vicious and dangerous from the prior history of the dog, *and not from his conduct on the occasion when he bit the plaintiff, or from the subsequent acts of the dog*—and in charging the jury that they might find the bad character of the dog from all the evidence in the case, both before and *after the act complained of*, and from the act itself. (1.) The accident occurred Feb. 23, 1855; the suit was commenced Feb. 26, 1855; the defendant parted with the dog six or eight days after the accident. The vicious acts of the dog took place in April, 1855, and long after the defendant parted with him. The vicious and dangerous habits of the dog were likely to be, and probably were, engendered by the act of biting the plaintiff and by subsequent treatment. Was it right that the defendant should be prejudiced by evidence which was got up after the suit was commenced ? (2.) If the dog's conduct subsequently is allowed to be shown, to establish what his prior character was, it would imply that the character of the dog could not change, and was entirely unaffected by circumstances ; whereas the habits, disposition and character of domestic animals undergo a change, as much as those of men, depending upon a variety of circumstances. It would hardly do to say if an individual commits a crime to-day, that therefore his character was bad months or years before, or that because a money lender is now in the habit of taking usury, therefore it is evidence of his habit formerly. (*Jackson* v. *Smith*, 7 *Cowen*, 717.) (3.) The burden of the proof was upon the plaintiff to show the dog to be vicious and dangerous ; the presumption being that the character of the dog was good up to the time of the accident. Could this presumption be overcome by proving his bad character *subsequently*, any more than in the case of an individual whose character at a certain period is in question ? (2 *Wend.* 352.) (4.) If the defendant was only liable upon the ground of actual or implied notice of the vicious and dangerous character of the dog, then the evidence was improper, as the defendant cannot be presumed to have had previous notice of a

vicious propensity which the dog acquired by the act of biting the plaintiff, and by subsequent treatment.

V. The evidence as to vicious acts of the dog after he bit the plaintiff, was improperly admitted, for the reasons stated in the last point. A new trial should be granted.

*H. Ballard,* for the plaintiff.

CAMPBELL, J. The complaint in this cause states two grounds on which a recovery is claimed : First, that the defendant wrongfully and without leave, having in his possession and keeping a large, cross, ferocious and dangerous dog, entered upon the premises of the plaintiff's father, and where the plaintiff was employed and lived with his father, whereupon the dog, without provocation and without the fault of the plaintiff, ferociously attacked and bit him ; and, second, that before and at the time of the injury, the defendant well knew that the dog was ferocious and dangerous, and accustomed to bite mankind. At the close of the case on the part of the plaintiff, the defendant moved for a nonsuit, on the ground that there was no evidence to charge the defendant with knowledge of the dog's vicious habits, which motion was denied, and renewed again at the close of the whole evidence in the case, and again denied ; to which ruling the defendant excepted.

The defendant then requested the court to charge the jury, that the defendant could not be held liable, unless he was shown to have had knowledge of the dog's propensity, and the court refused so to charge ; to which refusal there was an exception. The judge charged the jury, that if they found the fact that the defendant's dog was in the habit of following a team after which the defendant rode, and of watching such team, and that he was a dangerous and vicious dog to strangers passing by, when watching such team, and the jury should find the fact that he bit the plaintiff under the shed of the plaintiff's father at the public inn, in the manner and

Fairchild *v.* Bentley.

under the circumstances testified to by the plaintiff and his witnesses, then the defendant was liable without proof of the defendant's knowledge of the vicious and dangerous propensities of the dog, and although he might only be vicious and dangerous to strangers passing when he was watching.

The defendant had previously requested the judge to charge, that if the jury found the fact as proved by the plaintiff's witnesses, as to the hitching of the horses at the shed of the plaintiff's father, &c., and the biting of the plaintiff, it was not sufficient to charge the defendant, unless the defendant had knowledge. There was a refusal so to charge, and an exception.

Without stopping now to consider whether there was sufficient legal evidence to warrant the jury in finding, that at and previous to the injury, the dog was a vicious and dangerous dog to strangers passing by, when he was watching a team which he had followed; that is, that he would bite such strangers, for he could not be dangerous otherwise, inasmuch as the question whether the defendant had knowledge was wholly withdrawn and excluded from the consideration of the jury, it seems to me that the case narrows down to the single question, whether the dog was a trespasser on the premises of the plaintiff's father.

The plaintiff's father was the keeper of a public inn; he was obliged by law to provide food and lodging for travelers, and stabling and provender for their beasts. The defendant came as a traveler, entered the inn, and with his fellow traveler called for beer and cigars, and thus became the guest of the house. (*McDonald* v. *Edgerton*, 5 *Barb.* 560.)

There is a contradiction as to the team : the hostler swearing that he gave no directions as to the hitching, and the defendant's witness, Cran, saying that the hostler pointed out the place where the team was hitched, and told him he might hitch it there. This was in front of the shed. The dog was not there then, but was afterwards found lying under the shed and immediately in front of the horses. The plaintiff

seeing the horses injuring the wagon of his father, was about unhitching them, when the dog bit him. It was a shed belonging to the inn where the master was a guest, and where the team after which the master rode was hitched. It does not seem to me that the dog could, under the circumstances, be considered a trespasser, any more than if he had been found lying in front of the team in a public highway. It is true that a dog is not a necessary traveling companion, though often a very pleasant and useful one, and I would be unwilling to hold, that when he followed the master where the master had a right to go, he could always be treated as a trespasser. Certainly the least exceptionable place where a traveler's dog could be placed would be by his horses, under the shed of a public inn. The dog, almost universally considered and treated as the faithful friend of man, following him in his labor, his journeyings, and his sports, takes the place among domestic animals, which he owns and uses for his protection and his pleasures. The master has property in him, as in his horse, and the same rule must apply. To hold the master liable, it must appear that the dog was vicious, and the master knew it, or that he was a trespasser at the time of doing the injury. Certainly if the plaintiff had been injured by the bite or the kick of one of the horses at the time he was unhitching them, it would hardly be contended that the owner was liable, unless it had appeared that the horse was vicious, and prone to kick or to bite.

I hardly think that the evidence of subsequent bad conduct of the dog was admissible. In the case of *Dean* v. *Clayton*, (7 *Taunton*, 489,) Best, justice, cited a decision of Lord Mansfield, in a case where an ox, driven to market, was tranquil when it left, and became frenzied and gored the plaintiff, held an action would not lie. The animal, the dog for instance, may have been tantalized and annoyed and made cross. Hence the necessity of proving previous bad character, and that it was known. The subsequent bad character proves little. Besides, in this case the defendant parted with the

Fairchild *v.* Bentley.

dog, and subsequent treatment and training may have much to do with subsequent bad conduct.

But there is another view of this case, as regards the question of trespass. The dog was in the shed, not in accordance with, but against, the will of the owner. In the same case of *Dean* v. *Clayton*, Mr. Justice Park says: "A man may, and easily can, control his horse, but he cannot his dog." A dog might not be considered an intruder or trespasser, where an ox or a horse would. In this case, the defendant drove the dog back when he was leaving home; and conceding that the dog had no right to lie down in the shed, yet the trespass was involuntary and excusable. For the trespass itself, I do not think an action would lie. When the plaintiff's dog chased a hare on to the defendant's ground, and was killed by a dog spear, and such chasing was involuntary and against the plaintiff's will, Dallas, justice, says in the case before alluded to, "that if the action had been by the defendant against the plaintiff for the trespass, it would have been a defense."

There is an exception created by statute. By the statute law of this state, the owner or possessor of a dog is liable for any sheep killed by such dog, without previous notice to the owner or possessor that the dog was mischievous, or disposed to kill sheep. (1 *R. S.* 704, § 9.) In such case, and though the dog may trespass against the owner's wishes, and without his notice or consent, the owner or possessor is liable. The statute, then, makes the owners of dogs liable, while owing to the decision in *Van Leuven* v. *Lyke*, (1 *Comst.* 515,) the owners of horses, sheep, swine, &c., are liable at common law, because the owner of such animals can restrain them, and is therefore bound at his peril to confine them on his own land; and if such animals are improperly in another's close and there commit mischief, the owner is liable, without alleging or proving a scienter. No law would be requisite, that is, no statute, if the owner was at common law liable for the involuntary trespass of his dog. From the peculiar nature and habit of the animal, it may be seen at a glance,

how great is the distinction between the trespass of an ox or horse, and that of a dog. The statute makes, and the common law recognizes, this distinction. In either view of this case, whether the dog had a right to follow his master, and lie down in the open shed of a public inn, or whether he was, *quoad* the master, an involuntary trespasser, I do not think the defendant liable in this action, without proof of knowledge of vicious habits. It is a serious injury to the plaintiff, and one much to be regretted ; but it belongs to that class of misfortunes to which we are all subject when there is an injury without accountability, and which the law denominates *damnum absque injuria.* There must be a new trial, with costs to abide the event.

BALCOM, J. The conclusions to which I have arrived, after examining the question presented by the case and exceptions in this action, are briefly these : If the defendant knew his dog had the habit of following teams after which he rode, and of watching them after they were hitched and left by the defendant, and if he knew his dog was accustomed to attack and bite strangers to him, who approached teams which he watched, the defendant is liable to respond in damages for the injury his dog did to the plaintiff.

A man who owns such a dog, knowing its character, must secure it, so that it will not follow him when he rides to an inn, after a team, which is left in a barn, or shed, or upon premises used by the innkeeper in taking care of the teams and vehicles. If it follows him, and bites a third person, who lawfully and rightfully approaches or meddles with the team so left at the inn, the owner is liable, although the dog be watching the team at the time.

The plaintiff had the right to unhitch and remove the team, which the dog was watching at the time he tried to do it, and the dog was wrongfully there ; and if it had the habit above mentioned, to the knowledge of the defendant at the time the plaintiff was bitten, the plaintiff should recover.

I think the judge erred at the trial, in laying out of view the question, whether the defendant had knowledge of the habits of his dog at the time the plaintiff was bitten; and for this reason, I am of the opinion there should be a new trial; costs to abide the event.

MASON, J., dissented.

New trial granted.

[CORTLAND GENERAL TERM, November 9, 1858. *Mason, Campbell* and *Balcom,* justices.]