CHARLES CLEVELAND, Respondent, *v.* THE NEW JERSEY
STEAMBOAT COMPANY, Appellant.

In an action to recover damages for injuries alleged to have been caused
by defendant's negligence, plaintiff gave evidence to the effect that he
went on board of one of defendant's boats lying at its slip in New York
city as a passenger, just as it was starting. The signal to start was
given, the gang-plank was pulled in, and the boat had moved a short
distance away from the pier; the mate had the gate that closed the
gang-way, and was standing in front of it in the act of putting the gate
in place when a man on board rushed through the crowd of passengers
to get off the boat. The mate, hearing the shouts of the man, turned
partly around. The man passed through the gang-way, and in attempt-
ing to jump ashore fell into the water. There was a rush of passengers
to the side of the boat; the gate was shoved away and plaintiff was
crowded overboard. It appeared that defendant's orders were to close
the gang-way as soon as the plank was hauled in, and that it would take
two or three minutes to do this; there was no claim that defendant
had not provided the proper appliances for the purpose. *Held,* that the
testimony failed to show any negligence on defendant's part, and a
refusal to nonsuit was error; that the accident was an extraordinary
one that could not reasonably have been anticipated; and so, that the
failure to foresee and guard against it by putting the gate in place, and
securely fastening it before the boat started, was not negligence.

(Argued December 16, 1890; decided January 13, 1891.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an order
made July 20, 1889, which affirmed a judgment in favor of
plaintiff entered upon a verdict, and affirmed an order denying
a motion for a new trial.

This action was brought against defendant, a corporation
engaged in running a line of steamboats on the Hudson river
between New York and Albany, to recover damages for
injuries resulting from its alleged negligence in omitting to
close the gang-way of a boat upon which plaintiff was a
passenger.

This case is reported on a former appeal in 68 N. Y. 306.
A *mem.* of decision on a second appeal is given in 89 N. Y.
627.

The material facts, as they appeared upon the trial from the affirmance of judgment whereon this appeal is brought, are stated in the opinion.

*W. P. Prentice* for appellant.    The refusal to nonsuit was error. (56 N. Y. 656; *Cleveland* v. *N. J. S. B. Co.,* 68 id. 306, 313; 89 id. 627; 104 id. 439.) Assuming the most favorable view possible of the plaintiff's testimony there was not enough in the evidence to reasonably justify a conclusion of negligence. (89 N. Y. 627; *Dougan* v. *C. F. Co.,* 56 id. 1; *Joy* v. *Winnisimmet Co.,* 114 Mass. 63; *Crocheron* v. *N. S. S. I. F. Co.,* 56 N. Y. 656; *Putnam* v. *R. R. Co.,* 55 id. 108; *Hart* v. *R. R. Co.,* 84 id. 56; *Burke* v. *Witherbee,* 98 id. 595; *Palmer* v. *R. R. Co.,* 111 id. 488; *Hubbell* v. *City of Yonkers,* 104 id. 439; *Stringham* v. *Hilton,* 111 id. 188; *Conrad* v. *Williams,* 6 Hill, 45; *Dwight* v. *G. L. Ins. Co.,* 103 id. 343; *Sweeney* v. *R. R. Co.,* 10 Allen, 368, 373; *Carleton* v. *Steele Co.,* 99 Mass. 216; *Sweeney* v. *Nickerson,* 120 id. 306.) No issue of fact which could properly be submitted to the jury was raised by plaintiff's evidence. (Ram. on Facts, 164, 165; *McCarthy* v. *C. B. T. S. R. R. Co.,* 10 Daly, 540; *Culhane* v. *N. Y. C. & H. R. R. R. Co.,* 60 N. Y. 137; *Milton* v. *H. R. S. Co.,* 37 id. 210; *Conrad* v. *Williams,* 6 Hill, 446, 447; *Bryden* v. *Bryden,* 11 Johns. 189; *Foot* v. *Sabin,* 19 id. 156; *Palmer* v. *R. R. Co.,* 111 N. Y. 488; *Solomon* v. *M. R. Co.,* 103 id. 437; *Morrison* v. *E. R. Co.,* 56 id. 302; 58 Me. 382; *Toomey* v. *L. B. S. R. Co.,* 3 C. B. [N. S.] 146.) Any question that the gate was broken and not lifted out, or that it was in any way defective, or not a safe defense and able to resist great pressure when placed in its sockets as the mate left it to get the rail, seems to have been put to rest. It could not be pushed out. (81 N. Y. 373; 84 id. 56; *Loftus* v. *U. F. Co.,* 84 id. 459.) In the charge to the jury there were errors. The defendant had the right to have the requests given to the jury substantially in the form in which they were submitted. No facts were in evidence upon which these requests could be qualified.

(*Hollister* v. *Johnson,* 4 Wend. 639; *Morrison* v. *R. R. Co.,* 56 N. Y. 302; *Solomon* v. *M. R. R. Co.,* 103 id. 437; *Clark* v. *Dutcher,* 9 Cow. 674; *Markham* v. *Jordan,* 3 Abb. [N. S.] 286; *Conrad* v. *Williams,* 6 Hill, 446, 447.) The plaintiff's negligence contributed to the accident, and to the injury complained of, and in such case he cannot recover. He was bound to show absence of negligence on his part. (*Hale* v. *Smith,* 78 N. Y. 480; *Reynolds* v. *N. Y. C. R. R. Co.,* 58 id. 248; *Brown* v. *Maxwell,* 6 Hill, 592; *Wild* v. *R. R. Co.,* 24 N. Y. 430.) There was no allegation of special damage in this case. Any loss from change of employment would be special damage, and under the pleadings, could not be sought in this case. (*Butler* v. *Kent,* 19 Johns. 223; *Vanderslice* v. *Newton,* 4 N. Y. 139; 3 Pars. on Cont. 177; *Hamilton* v. *McPherson,* 28 N. Y. 72.)

*Edwin H. Risley* for respondent. The plaintiff was a passenger. (*Cleveland* v. *N. J. S. Co.,* 68 N. Y. 306.) The defendant owed to the plaintiff the legal duty of a common carrier of passengers, which is the strictest diligence to protect his life and person, and renders the defendant liable for any injury which might reasonably be incident to the nature of the business, the number and character of the persons on the boat and the risk attending the surrounding circumstances. (68 N. Y. 306.) The jury alone was competent to deal with the credibility of the various witnesses. (*Wright* v. *Saunders,* 65 Barb. 214; 3 Keyes, 323; *Dunn* v. *People,* 29 N. Y. 523, 529, 531; *Elwood* v. *W. U. T. Co.,* 45 id. 554.) Upon the defendant's theory that the mate hung the gate across the gang-way just after the boat started, and that it was displaced by the man who wished to get ashore, the jury nevertheless, had the right to impute negligence to the defendant in starting the boat, without using the stanchion posts and top rail under all of the circumstances of the case. (*Breen* v. *N. Y. C. & H. R. R. R. Co.,* 109 N. Y. 297.) The question of contributory negligence on the evidence was properly submitted to the jury. The verdict is not excessive.

(*Hickinbottom* v. *D., L. & W. R. R. Co.*, 15 N. Y. 13 ; *Leeds* v. *M. G. L. Co.*, 90 id. 26 ; *Stall* v. *G. S. & N. R. Co.*, 107 id. 625.) This case must be determined on the evidence disclosed in this record. There is no certificate of the trial judge that the case contains all of the evidence given on the trial.

PECKHAM, J. This is the third time this case has been before us. On the former appeals the judgments for the plaintiff were reversed on the ground that no negligence on the part of the defendant was proved. Subsequent to the last reversal a third trial was had at the Circuit and the plaintiff was nonsuited in obedience to what was supposed to have been the ruling of this court. That nonsuit was set aside on appeal to the General Term of the Supreme Court, and a fourth trial was had, resulting in the recovery of a judgment by the plaintiff, which has been affirmed by the General Term, and from that affirmance the defendant has appealed here.

The action was commenced on the 18th of December, 1873, and from that time it has been fought with great tenacity by both sides. The case is a strong illustration of the uncertainties inherent in the application of well-known and easily-understood principles of law to facts as they appear on different trials. One side contends that the facts now before us are substantially the same as those which have been passed upon by this court in the former appeals, while the other contends that the principal question for us now to determine has never been decided adversely to him by this court, nor has it been presented on its merits as it now stands.

We must take the case from the record now before us, and if the plaintiff made out a case to go to the jury we cannot interfere, although the defendant should claim that the evidence on the part of the plaintiff was so contradictory as to be unworthy of belief. In general the credibility of witnesses is for the jury to pass upon, and this court has no function of that kind to perform.

Some things have been adjudicated in the former appeals, and are not now open for discussion. It has been decided that the plaintiff was on the boat in the character of a passen-ger, and the defendant owed him the duty which a carrier of passengers owes to a person in its charge as such. It was con-ceded then, and is not denied now, that the defendant had on its boat all the appliances necessary and proper to prevent such an accident. It was stated on the first appeal that it was plain the accident would not have happened, but for an extra-ordinary and unprecedented concurrence of circumstances, viz.: the attempt of three rash persons to regain the land after the boat had started; then the heedless and unthinking rush and pressure of a crowd of passengers of ordinary sobriety and prudence, and then the wrongful opening of the gate by an unauthorized person. Had not these three things conjoined, the court could not say that the plaintiff would have been harmed.

Upon the trial now under review the plaintiff claimed that the defendant was negligent in not closing the gang-way before the boat started, as it had ample means for doing so, but failed to use them. He also claimed that in starting the boat before the gang-way was closed the servants of defendant disobeyed its standing orders, which he stated were to close and secure the gang-way as soon as the gang-plank was hauled and before the boat started. The plaintiff's counsel argues that there is a difference which is most material between the fastening of the gate itself before the boat started, and putting in place the rail (which was put on top of the gate), and stanchions before such starting. It was held on the first appeal that defendant was not chargeable with negligence in not putting in place the rail and stanchions before the boat started. Judge FOLGER said that experience had not shown that danger was to be apprehended from that source, or that it was necessary to be guarded against. (68 N. Y. 306, at 313.)

In order to see precisely what the case now before us is, it is best to take some extracts from the evidence, on the part of the plaintiff, as to what was the condition of things when the

accident occurred.   I will take the evidence of the plaintiff
and his friend Schwab who accompanied him, which is as
favorable an account for him on the facts as can be found in
the record.

Having approached the boat, which was lying at its slip in
New York city a short time prior to its departure on the 8th
of September, 1873, at six o'clock P. M., the plaintiff. and his
friend boarded it on its starboard side, a little aft the wheel-
house, the boat heading towards the west.   They went from
the dock down on the boat by means of a gang-plank about the
width of the gang-way .opening, and which plank was guarded
with rails on each side.   Continuing, the plaintiff says: "I
went on the boat and turned around, took my handkerchief
out of my pocket and waved it to my friends on the pier.
Just at that time, I think, the boat started.   I heard an order
to cast off or throw off the line — something like that. I did
not understand about it, and the boat started.   Just at that
instant somebody from back in the crowd — back in the
boat — came running through the crowd hallooing and coming
pretty fast, rushing against the people and coming towards the
edge of the boat to get off.   The boat was going — had gone
quite a distance — probably twenty-five feet.   It had swung
out away from the pier twelve or fifteen feet, I should think.
This man jumped out of sight overboard.   There was a man
that was there by the gate.   The people hallooed 'man over-
board,' and immediately there was a big rush that pushed seven
or eight of us in immediately.   I heard the order to haul in
the gang-plank.   I didn't understand whether it was to haul
in or haul out.   I know it was swung out on the pier.   They
raised the end on the boat and swung it in, just raised it up
and swung it back on the pier.   Just at that time the hawser
was cast off, going on at the same time ; there was men right
there, had the big lines in their hands then, right at the
edge of the gang-way.   That was at the same time the
hawser was being hauled up.   They swung it up and com-
menced hauling up the hawser at the same time.   The boat
was going.   The mate had the gate.   Mr. Mull was the mate.

At the time this man came through, Mr. Mull was standing partly in front of the gang-way opening, at the post this gate sets on. He had the gate. I suppose he was in the act of putting it in. He had the gate in his hand, partly in front of the gang-way opening; as this man came through he partly turned; he had hold of the gate some way with both hands; this man passed right by through there along the boat, outside of this guard, and stepped right along on that and jumped. I was pushed overboard right there. There was no gate in. I didn't see the gate after that; it was knocked out of the way, at least it was not there when I got to it."

The testimony of Schwab is substantially corroborative of this. He says the gate had not been closed before the accident happened; "there was a man had hold of the gate. He had it in his hand and in the act of putting it in. The man was in the act of putting the gate in, about as the crowd came and pushed along."

As to the alleged standing order of the defendant not to start the boat until the gang-way had been closed and secured after the hauling in of the gang-plank, the evidence does not come up to the allegation. The evidence of Keller, a deckhand, was that the orders were to close the gang-way as soon as the plank was hauled. He says nothing as to this being done before the boat started. He also says it would take two or three minutes to put in the gate and secure the gate-way opening. Mr. Mull, the mate, said there was a general standing order to close the gate immediately upon hauling the gang-plank. Mr. Scoville was clerk on board the boat, whose duty kept him in the office, where he sold tickets, and he had nothing to do with the running of the boat. He was called by the defendant, and upon his cross-examination by plaintiff's counsel, he said that he had always understood that one of the standing orders on the boat was that the gate must be closed and secured before the boat started, although he admitted that he had never heard the order given.

There cannot be said to be any proof that the order was to close and secure the gate before the steamer started.

Now, upon this evidence, which is at least as favorable to the plaintiff as any in the case, we are bound to say there is no proof of negligence on the part of the defendant.

It appears that as soon as the signal was given, the gang-plank was hauled up and the boat started. Immediately upon the hauling up of the gang-plank the mate started for the gate and brought it to the gang-way opening, and was in the very act of setting it in position when the man brushed by him and jumped. At this time the boat had only moved thirty-five or forty feet along the pier, and was about twelve or fifteen feet away from it, and yet in that brief period the mate had almost accomplished a secure shutting of the gate. To say that the boat should not have been allowed to move a foot from the dock until this gate had been thus securely fastened and the rail and stanchions placed in position, is to decide the matter in view of the facts which subsequently occurred, and not from the circumstances existing prior thereto. It was an accident which could not, as I think, have been reasonably anticipated. The attempt of a belated man to jump from the boat to the wharf immediately after the starting of the boat, his failure to reach the dock, and his consequent falling in the water; the cry of "man overboard," the instantaneous rush of a crowd of ordinary passengers towards the side of the boat whence the cry proceeded, and the shoving of the plaintiff overboard, altogether form such an extraordinary and theretofore unheard of combination of circumstances that the failure to foresee their possibility and to guard against their happening cannot, in any fair or proper view of the subject, be called negligence. The mere fact that an accident of the kind has never before happened may not be enough to avert the charge of negligence. If it might reasonably have been anticipated, or if its occurrence would not, in the minds of reasonable men, be in the highest degree unlikely, if things were left in the condition then presented to them, the charge of negligence might be a proper one for the jury to pass upon. (*Dougan* v. *Transportation Co.,* 56 N. Y. 1; *Hubbard* v. *City of Yonkers,* 104 id. 434.)

But here is a case where an accident of the nature proved not only never happened before, but it resulted from causes which no human being up to that time could reasonably expect to concur.

In this view it is wholly immaterial whether the mate, when he heard the voice and turned around, did so for the purpose of letting the man through the opening, or only for the purpose of seeing what was being done, with a view to perform his own duty more intelligently. It was not to be anticipated that the man would make an ineffectual effort to jump to the dock and fall in the water, and that then all the other circumstances should occur which resulted in shoving the plaintiff overboard.

The accident, upon the proof in the case, looking at it in the most favorable light for the plaintiff, was the result of causes for whose existence no one was legally responsible.

The judgment should be reversed and a new trial ordered, with costs to abide event.

All concur, except RUGER, Ch. J., dissenting.

Judgment reversed.