GEORGE HOLLENBECK, Appellant, v. DELOS H. JOHNSON, Respondent.

*Trespass by animals — proof of negligence — the injury must be the natural and probable consequence of the act.*

A person is answerable, not only for his own trespass, but also for that of his domestic animals.

In order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.

APPEAL by the plaintiff, George Hollenbeck, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 18th day of July, 1893, upon the report of a referee.

Plaintiff served exceptions to the report of the referee and also to his refusal to find "that the plaintiff is entitled to recover for his personal injuries resulting from his falling into the cistern through the hole made by the defendant's cow."

*Smith & Dickinson*, for the appellant.

*J. E. Eggleston*, for the respondent.

HARDIN, P. J. :

January 3, 1892, the parties resided in the village of Fabius. The plaintiff was in possession of twenty-two acres of land as a tenant, which he had occupied some four years; and upon the premises so occupied by him was a barn, about five rods north of and fronting on North street, in which barn were several doors opening toward the street. The barn had been built some forty-five years. Under the floor, near the north side of the barn, was a cistern about ten feet across the top and about nine feet deep, over which were stringers about three feet apart. The cistern had been covered over with inch hemlock boards about two feet below the barn floor. On that day the plaintiff kept in the barn his hens, hay and fodder, and a cow and a horse. There was no road fence in front of the barn, and the small door of the barn was allowed by the plaintiff to remain open on the day in question, "and there was nothing to prevent cattle passing along said street from entering said barn through said small door." Some fifty rods distant from the barn of the plaintiff the defendant resided, and was the owner of a cow which he kept on his premises, which cow weighed about 800 pounds. About one o'clock of the 3d of January, 1892, the defendant led his cow from his barn into an inclosed yard south of and adjoining his barn ; closed the gate through which the cow had entered the yard, and fastened it on the inside with a wooden pin and on the outside with a hook and staple. The yard was fenced all around by a picket fence and a high board fence some four feet high. About two o'clock in the afternoon of

the day the defendant went to his yard, and found the little gate open and the cow gone, and he immediately commenced to search for her and continued his search until about four-thirty P. M., when he learned that there was a cow in the cistern under the plaintiff's barn, and there found the fact to be that his cow was then in the plaintiff's cistern. It appears the defendant's cow escaped from his inclosure without any fault of his and passed over his premises to the premises of the plaintiff and entered through the small door of plaintiff's barn to a point over the cistern, and when she reached the sleepers of the floor over the cistern they gave way, being very much decayed and impaired by age, and the cow fell into the cistern "carrying down with it three sleepers, and the plank under said cow also broke and said cow fell down into the cistern, and when found had one horn loosened and her skull broken." "The hole made in the floor by the cow breaking through was about three feet across, but with irregular edges."

The referee finds, viz.: "That about three o'clock in the afternoon of January 3, 1892, the plaintiff, George Hollenbeck, went to the barn so occupied by him as aforesaid, and saw some cattle tracks on the outside, by the barn door, and then went into the barn through the small door, but discovered no cattle there, and then went into the granary, which was a little northwest of the place where the break in the floor occurred, and got some feed for his hens and returned to the front part of the barn and there threw it down. Plaintiff then started to go where his cow was in the lean-to or addition to see if she was loose, and in going in that direction and upon that errand fell into the cistern through the hole made by defendant's cow when she fell through the floor. * * * Plaintiff did not observe any break or defect in the floor, and did not know of any break or defect therein until after he had fallen into said cistern." It is found that the plaintiff sustained some injuries about the shoulders and neck by the fall. It is found that the plaintiff at the time of the said injuries, and for "some years previous thereto, knew that there was a cistern under said barn, * * * and was informed and knew that a board covering had been placed over it about two years previous to the time of the injury, but never had been under the barn and did not know the exact place where said cistern under said barn was located." And the referee finds:

"Plaintiff had not, at the time of said injury, nor at any time previous thereto, any knowledge or information that said barn floor or the timbers upon which it rested were weak and rotten or in any way defective and unsafe. An examination of said sill and sleepers made under the barn previous to said injury would have revealed the weakness and rottenness subsequently found to exist, but plaintiff, having no knowledge of such weakness and rottenness previous to the injury, made no examination of them."

The referee found : "There was no evidence given upon the trial showing, or tending to show, that defendant's cow assaulted plaintiff's person, nor that she in any manner injured his person by coming in contact with it." "That there was no evidence given upon the trial showing or tending to show that defendant's cow was vicious, unruly or ugly." "That in the keeping and care of his cow defendant has in all things exercised proper care, and when his said cow escaped from the yard, as stated in the fourth finding of fact, it was without any fault or negligence on his part."

In the conclusions of law the referee stated that the plaintiff was not bound to maintain a fence upon the highway; that his failure to fence the street or highway does not prevent a recovery in an action of trespass where the entry upon his premises was from the street, and that the entry of the defendant's cow upon the premises of the plaintiff from the highway into his barn and the breaking down of the sills, sleepers and floor "is a trespass for which the plaintiff in this action is entitled to recover against the defendant herein one dollar." He also found, as matter of law, "that the plaintiff is not guilty of any contributory negligence or want of care that would debar him from a recovery in this action, for the injury to his person caused by falling into the cistern, as stated in the sixth finding of fact herein." "That the plaintiff in this action cannot recover of the defendant herein any damage for the injury to his person caused by his falling into the cistern, as stated in the sixth finding of fact. That the injury to plaintiff's person caused by his falling into the cistern is not proximately connected with the trespass of the defendant's cow, and any damage resulting to plaintiff's person from such fall is remote and consequential, and no recovery therefor can be had in this action. That the defendant is not chargeable in this

action with any want of care or prudence in taking care of his cow. That the injury suffered by plaintiff by falling into the cistern was not such as would usually and probably result from the escape and subsequent trespass of defendant's cow, and was not such an injury as might reasonably have been anticipated from such trespass. That the injury to plaintiff's person caused by falling into the cistern was not such as defendant could, with the exercise of ordinary care, prudence and foresight, have guarded against." Ample evidence was given to sustain the findings of fact made by the learned referee. It is now insisted, in behalf of the appellant, by his learned counsel, and, we think, correctly, that the defendant is answerable "for his own trespass, and also for that of his domestic animals." (*Dunckle* v. *Kocker*, 11 Barb. 387; *Fairchild* v. *Bentley*, 30 id. 155; *Van Leuven* v. *Lyke*, 1 Comst. 515; *Dickson* v. *McCoy*, 39 N. Y. 400; *Wells* v. *Howell*, 19 Johns. 385.)

(2) It is contended by the appellant's counsel that inasmuch as the cow made the hole while trespassing upon the plaintiff's premises, into which the plaintiff fell and received the injuries complained of, that he can recover for such injuries; and it is contended "that the damages were the immediate and natural consequence of the trespass  *  *  *  and that the defendant is liable for the entire damages sustained by the plaintiff." To support his contention he asks our attention to several authorities to which we will allude.

In *Scott* v. *Shepherd* (2 W. Black. 892) it appeared that the defendant had thrown a lighted squib into a market house, where there was a large crowd, and it fell on a stand, and it was thrown therefrom to another stand, where it was thrown by another person, and it struck the plaintiff and put out his eye. While the judgment was pronounced in favor of the plaintiff, it was upon differing views by the members of the court, the majority of the court seeming to be of the opinion that the facts and circumstances were such as to indicate that the plaintiff sustained the injuries complained of by reason of the wrongful act of the defendant, which was to be treated as continuing through the entire motion of the squib, and that the consequences were to be visited upon the defendant, the same as though the squib had been discharged against a board or hard substance, and bounded back and occasioned the injuries sustained by the plaintiff. The case differs essentially from the one in hand.

In *Guille.* v. *Swan* (19 Johns. 381) it appears that the defendant had ascended in a balloon and in his descent he became entangled and his safety endangered, and at his invitation the crowd gathered upon the plaintiff's garden, and it was held the plaintiff could recover because it appeared that the damages which the plaintiff suffered were the direct result of the acts of the defendant.

*Vendenburgh* v. *Truax* (4 Den. 464) was the case of a defendant chasing a boy into the plaintiff's store, and the boy ran against a faucet in a wine cask which caused a wastage of the wine. The defendant was engaged in an illegal and mischievous act, and in the course of the opinion delivered by BRONSON, Ch. J., he said that under such circumstances a party is liable " for all the consequences which may directly and naturally result from his conduct." That case differs from the one before us.

In *Jeffrey* v. *Bigelow* (13 Wend. 518), which was the case of the sale of diseased sheep, the plaintiff was allowed to recover damages which he sustained, not only by reason of the impaired value of the sheep purchased, but the damages that were brought directly to the plaintiff by reason of the disease being communicated to his other flock, the damages being traceable directly to the wrongful act of the defendant.

In *St. Peter* v. *Denison* (58 N. Y. 416) it appeared that the wrongful act of the defendant consisted in blasting stone and earth by means of a blast while executing a contract on the Erie canal for the State. We see nothing in the case which supports the contention of the appellant.

In *Lowery* v. *Manhattan R. R. Co.* (99 N. Y. 158) the action was for the negligence of the defendant in dropping coals of fire, causing the horse to become unmanageable, which reaching the street injured the plaintiff; and it was held that so long as the injury was chargeable to the original wrongful act of the defendant it was liable, and the liability in that case was upon the ground "that the action of the driver in view of the exigency of the occasion, whether prudent or otherwise, might be considered as a continuation of the original act, and so that act was the proximate, not the remote cause of the injury; also, that the injury was a natural and probable consequence of the defendant's negligence." We see nothing in the case which supports the contention of the appellant.

In *Thomas* v. *Winchester* (2 Seld. 397) it was held that a dealer in drugs and medicines who carelessly labels a deadly poison as a harmless medicine was liable " out of the duty which the law imposes upon him to avoid acts in their nature dangerous to the lives of others," and the right of recovery was made to rest upon the defendant's negligence; and in the course of the opinion it was said, viz.: " So highly does the law value human life that it admits of no justification wherever life has been lost, and the carelessness or negligence of one person has contributed to the death of another." (See p. 409.)

In the case in hand there is no finding of negligence on the part of the defendant; on the contrary, the circumstances disclosed in the evidence, as well as the finding made by the referee, indicate that the defendant was in no way guilty of negligence in producing the aperture in the floor through which the plaintiff fell and received the injuries complained of. In many respects the case here resembles *Harvey* v. *Dunlop* (Lalor Supp. H. & D. 193), in which case it was held no recovery could be had.

In *Bullock* v. *Babcock* (3 Wend. 391) the injuries sustained were by reason of one boy shooting with a bow and arrow and inflicting an injury upon the plaintiff, and although it was said in that case that the plaintiff could recover, MARCY, J., who delivered the opinion, said: " It is decided in the case of *Wakeman* v. *Robinson* (1 Bing. 213), if the accident happen entirely without the fault of the defendant, or any blame being imputable to him, an action will not lie."

In volume 1 of Sedgwick on Damages (8th ed. § 113) it is said " that the law does not and cannot give complete compensation for the injury sustained; it refuses to take into consideration any damages remotely resulting from the act complained of;" and in section 116 the author adds: " The question whether an item of loss is or is not a proximate consequence of the wrong is in each case a question of fact." This latter rule seems to have been approved in *Reiper* v. *Nichols* (31 Hun, 495), and in *Milwaukee Railway Co.* v. *Kellogg* (94 U. S. 474). After an assertion of the difficulty found in the application of the rule, STRONG, J., says, at page 475 : " But it is generally held that, in order to warrant a finding that negligence,

or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." The rule as just quoted was reasserted in *Scheffer* v. *Railroad Co.* (105 U. S. 249), which was a case where a passenger was injured in a collision on a railroad and his mind became disordered, and he afterward committed suicide some eight months after the injuries were received, and the court held that, as his own act was the proximate cause of his death, no recovery could be had, and the pivotal point was mentioned near the close of the opinion in the following language : " The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train. His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials as his suicide, and each of these are casual or unexpected causes intervening between the act which injured him and his death."

In *Cleveland* v. *N. J. S. Co.* (125 N. Y. 299) it was held that a recovery could not be had for the accident which occurred, and it was said " that the accident was an extraordinary one that could not reasonably have been anticipated."

In *Gibney* v. *The State* (137 N. Y. 1), in considering the question of whether damages sought to be recovered in that case were proximate, ANDREWS, Ch. J., laid stress upon " the fact that such an accident as that which befell the child might reasonably have been anticipated as the result of the condition of the bridge, and the further consideration that a parent or other person seeing the child in the water would incur every reasonable hazard for its rescue." No similar facts are found in the case before us; on the contrary, the facts and circumstances arising in the case in hand strongly indicate that no human foresight would apprehend that any such result would follow, or that the defendant at the time he led his cow out of the barn at one o'clock and placed her securely in his yard adjacent to his barn could foresee that in some unexpected way the gate to his yard would be opened, and the cow pass off his premises

down the street, and enter the door of the barn of the plaintiff, if found open, and go into the barn across the floor over a cistern under the floor, and that the floor over the cistern would be so much decayed that it would fall in the manner in which the evidence discloses it did, and leave an aperture which would be subsequently visited by the plaintiff, who, without giving full attention to his movements, would fall through the floor into the cistern, and receive the injuries of which he complains in this action. We think the damages sustained by the plaintiff were not the proximate result of any wrongful act of the defendant, and that they were too remote, and that the learned referee properly refused to award damages to the plaintiff sustained in consequence of the fall into the cistern. The conclusions reached by the learned referee are approved, and the judgment entered thereon should be affirmed.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.