County Court, Monroe County, April, 1897.    Unreported.

PEOPLE *v.* CARL BREDE.

SUTHERLAND, J.  Demurrer to an indictment found by the grand jury of Monroe county, charging the defendant with misdemeanor for violation of the Liquor Tax Law, by the sale of fermented and malt liquors on Sunday, July 12, 1896, at the city of Rochester.

The indictment consists of three counts.  The first count reads as follows: "The grand jury of the county of Monroe by this indictment accuse Carl Brede of the crime of misdemeanor, to wit: A violation of section 31 of chapter 112 of the Laws of 1896 of the State of New York, entitled 'An act in relation to the traffic in liquors, and for the taxation and regulation of the same, and to provide for local option,' constituting chapter 29 of the general laws, committed as follows: The said Carl Brede on the twelfth day of July, in the year of our Lord one thousand eight hundred and ninety-six, at the city of Rochester, in this county, willfully and unlawfully did offer and expose for sale fermented and malt liquors, in quantities of less than five gallons at a time, to be drunk on the premises, on the first day of the week, commonly called Sunday, to a person whose name is to this grand jury unknown, and can not, therefore, be given, said person not being a guest of a hotel then and there kept by the said Carl Brede, contrary to the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

The second count is similar to the first in all respects except that it charges that Brede on said day at said city of Rochester "willfully and unlawfully did sell and deliver fermented malt liquors * * * to a person whose name is to this grand jury unknown."

The third count is similar to the first and second in all respects, except that it charges that said Brede on said day and at said city, "willfully and unlawfully did give away and deliver fermented and malt liquors * * * to a person whose name is to this grand jury unknown."  The second and third counts respectively contain, also, an allegation that the act charged is the same complained of in the first count.

The defendant demurs to the indictment upon the following

grounds: First, that the grand jury by which the indictment is found have no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the county. Second, that the indictment does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure. Third, that more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure. Fourth, that the facts stated do not constitute a crime. Fifth, that the indictment contains matter, which, if true, would constitute a legal justification or excuse for the acts charged or other legal bar to the prosecution.

This indictment and three others, charging the defendant with misdemeanors committed by the sale of liquor on Sunday, were found by the grand jury, which was convened in connection with the September, 1896, Trial Term of the Supreme Court. The grand jury which was convened in connection with the January, 1897, Trial Term, found seven additional indictments against Brede, charging him with misdemeanor, committed by the sale of liquors on other Sundays, and the last seven indictments are similar in form and phraseology to the first four which have been described, except that in the second and third counts of the indictment found by the January grand jury there is no allegation to the effect that the offense complained of arises out of the same act described in the first count.

When the defendant was arraigned he filed a demurrer to each of the eleven indictments above described, and each demurrer is based upon the same ground. A large number of other persons were indicted by said grand jury, the indictments in each case being similar in form to the latter Brede indictments, and counsel for said other indictments have filed demurrers to said indictments similar in form to the demurrers taken to the Brede indictments. By consent, these demurrers have been argued together, as the questions to be passed upon seemed to affect and be decisive of all cases alike.

Pomeroy P. Dickinson, for defendant Carl Brede; Thomas E. White, Philetus Chamberlain, William H. Sullivan, H. C. Spurr, William H. Beach, Charles L. McDowell, George V. Fleckenstein, Louis H. Jack, Charles F. A. Young, Irving Paine, and Delbert C. Hibbard, counsel for other defendants.

George D. Forsyth, District Attorney, for the people.

SUTHERLAND, Co. J.  The first objection taken to the indictments is a denial of the jurisdiction of the grand jury to inquire into the offense and to present an indictment therefor; that the only statute under which the defendants could be punished for the illegal sale of intoxicating liquors on the day mentioned in the indictments is the Liquor Tax Law of 1896, under which the grand jury, by express words, is given jurisdiction over the offense.  The Liquor Tax Law in this respect supersedes as to this class of misdemeanors that section of the charter of the city of Rochester, as amended by chapter 204, Laws of 1893, giving to courts of special sessions held by the police justice of said city, exclusive jurisdiction to hear, try and determine all charges of misdemeanor committed within the city of Rochester.

The second objection is believed to be untenable and not serious enough to require discussion.

The third ground of the demurrer is that more than one crime is charged in the indictment.  This objection cannot be charged against the first four Brede indictments because in each one of them is contained the allegation that the third and fourth counts refer to the same transaction set forth in the first count, nor are the other indictments which do not contain such an allegation to be set aside for that reason.  It is plain that the grand jury have intended to charge but one offense in each separate indictment, and in the three counts of the indictments have set forth three different ways in which the same offense is charged to have been committed.  First, by exposing for sale; second, by a sale and delivery; and third, by the giving away of the same liquor to the same person.

This form of pleading is permissible.  Code of Criminal Procedure, § 279.  The indictment is drawn so as to meet the evidence as it may be brought out upon the trial, and if it should appear that the transaction was an offering or exposing for sale, the first count would be appropriate; if it amounts to a sale and delivery, the people will stand upon the second count; and if it shall appear to be the giving away of the liquor, the third count will suffice.  The pleading is undoubtedly proper, if the different counts refer to the same transaction.  People v. Charbineau, 115 N. Y. 433; People v. Wilson, 151 N. Y. 403.  In People v. Harmon, 49 Hun, 558, the demurrer was sustained because the first count charged an unlawful sale upon one day and the second count an unlawful sale upon different days.

But Judge Haight, in writing the opinion of the General Term, says: "It would have been competent to have charged that the offense was committed on Sunday, the 26th day of February, by the selling of intoxicating liquors, and to have charged in the second count the same offense at the same time by the giving away of intoxicating liquors."

It is urged with particular insistence that different transactions are referred to, because it does not appear that the unknown person to whom the liquor is said to have been offered for sale, in the first count, is the same unknown person to whom it actually was sold and delivered as charged in the second count.

But the indictment is not demurrable for the misjoinder of two distinct offenses unless "it appears upon the face thereof * * * that more than one kind is charged in the indictments." Code of Crim. Proc., § 323. It does not appear upon the face of the indictment that different persons are referred to; and the fact that the indictment fails to state affirmatively that the unknown person in one count is the same person referred to in the other counts does not make the indictments demurrable. If any presumptions are to be indulged in, we must assume that the same person was intended to be referred to rather than different persons. People v. Adams, 17 Wend. 435.

There is no force in the objection that the facts stated in the indictment do not constitute a crime for the reason that the name of the purchaser of the liquor is not stated. It is enough that the indictment contains an averment that the name of the purchaser is to the grand jury unknown. People v. Stone, 85 Hun, 130.

It has also been urged upon our attention with much earnestness by counsel for the many defendants who were represented on the argument of these demurrers that it may be legitimately inferred from the language of the indictment that in each case the purchaser of the liquor was a guest at the hotel kept by the defendant, and that in order to set forth a crime the indictment should contain the further allegation that the liquor was served to the guest neither with his meals nor in his rooms or apartments therein. In this connection it is also insisted that every indictment for the illegal sale of liquor on Sunday in order to be valid must contain a negative averment to the effect that the sale was not to one of that class of persons called guests and

was not made in one of the ways in which sales to guests are permitted on Sunday by the words of the Liquor Tax Law, namely, "With their meals, in their rooms, or apartments therein, but not in the barroom or other similar room of such hotel." Liquor Tax Law, § 31. But, in my opinion, it is not necessary for the indictment to contain a negation covering the exception created by the statute in favor of a hotel keeper in selling to a guest with his meals or in his apartments. The statute contains in section 31, first of all, a general prohibition upon the selling, exposing for sale or giving away of intoxicating liquors by any person on Sunday. The particular clause in which this enactment occurs contains no qualifications whatever. At the end of section 31 two exceptions are separately noted; first, that the general prohibition thereinbefore enacted shall not prevent a regularly licensed pharmacist from selling liquor under certain circumstances upon the prescription of a physician, and, second, shall not prevent a hotel keeper who is a holder of a liquor tax certificate from selling liquor to his guests with their meals or in their rooms or apartments. The exceptions are not interpolated into the body of the clause enacting the general prohibition; therefore it becomes the duty of the defendant to bring within the exception, and the indictment need not state that he is not within the excepted class. In Bishop's New Criminal Practice, volume 1, section 635, it is said: "If there is an exception in the enacting clause the party pleading must show that his adversary is not within the exception, but if there be an exception in a subsequent clause or subsequent statute, it is a matter of defense and is to be shown by the other party." Authorities are abundant in support of this proposition. Wharton's Criminal Law, vol. 1, §§ 378, 380; Am. & Eng. Ency. of Law, vol. 10, p. 575; Jefferson v. The People, 101 N. Y. 19. There appears to be no more reason for negativing the fact that the sale was made by a hotel keeper to his guest than that the indictment should state that the sale was not made by a pharmacist upon prescription.

But the defendants claim that each indictment contains what amounts to an admission that the purchaser of the liquor was a guest at a hotel kept by the defendant; and this contention is based upon the supposition, which the defendants put forward as sound law, that every time any person buys a drink of liquor at an inn, by that act alone he enters into

the relation of a guest of the house, and the opinion of the Delaware General Term of the Supreme Court in McDonald *v.* Edgerton, 5 Barb. 560, is relied upon as authority for the proposition contended for. But neither the facts of that case nor the opinion of the court gives support to the position of the defendants' counsel. The plaintiff McDonald sued the defendant, an inn keeper, for the value of an overcoat, and evidence was given on the part of the plaintiff to prove these facts. That the plaintiff stopped at defendant's inn on "General Training Day," soon after seven o'clock in the morning, took off his overcoat, gave it to the barkeeper and then bought liquor at the bar, for which he paid; on returning to the hotel later in the day the overcoat was missing; and the action was brought for its value by the plaintiff under the claim that he was a guest of the hotel. The evidence offered by plaintiff's witnesses as to the receipt of the coat by defendant's barkeeper was contradicted by defendant's witnesses, but purchase of liquor was not denied.

The jury in the justice's court where the case was tried rendered a verdict for the plaintiff; the judgment entered thereon was reversed by the Delaware County Court and an appeal taken from the judgment of reversal to the General Term. The Supreme Court held that whether the plaintiff was a guest or not was a question of fact that had been determined by the jury upon conflicting evidence, and reiterated the familiar rule that where there is a conflict of evidence upon a trial in a justice's court, so far as all questions of fact are concerned, the verdict of the jury is conclusive and can not be reviewed elsewhere, however much the verdict may be against the weight of evidence; and, accordingly held that it was error for the County Court to reverse the judgment, there being some evidence, at least, that the relation of landlord and guest actually existed between the plaintiff and defendant.

The Supreme Court did not hold, nor mean to say, that in all cases the mere purchase of liquor at an inn constitutes the purchaser a guest, and when Judge Mason says, after discussing the evidence, that "purchasing of the liquor was enough to constitute the plaintiff a guest," he means to be understood as holding that, assuming the evidence given by the plaintiff's witnesses as true, the purchase of liquor by the plaintiff in connection with the previous act of the barkeeper in taking his goods in custody was sufficient in that particular case to warrant the verdict of the

jury. Counsel now insists that the court intended to hold that
as a matter of law the purchase of the liquor established plaintiff's
status as a guest. But in the opinion Judge Mason repeatedly
asserts that whether he became a guest or not was a question of
fact which the jury had to decide upon disputed evidence and
not a question of law. The purchase of the liquor was conceded;
consequently the Supreme Court could not have believed the
purchase of the liquor to be conclusive upon the question of the
plaintiff's relation as a guest of the inn. McDonald v. Edgerton
is frequently referred to in the later reports, sometimes as an
authority for the rule that an appellate court can not reverse a
justice's decision because it is against the weight of evidence
(Adsit v. Wilson, 7 How. 64) ; and often upon the general liability
of a hotel keeper for the loss of the goods of his guest; and else-
where as authority for the proposition that the shortness of the
stay of a guest at a hotel is immaterial in determining the
liability of the landlord, but I have found no instance where
McDonald v. Edgerton is referred to as holding that the purchase
of liquor alone as a matter of law constitutes one a guest at an
inn. It perhaps may be claimed that in Fairchild v. Bentley, 30
Barb. 147, the court seems to consider McDonald v. Edgerton
authority for such a proposition.

But in Fairchild v. Bentley the person whose relation to the
hotel as a guest was discussed, came to the hotel with his team,
and the hostler pointed out the place where the team might be
hitched under the shed, and then the driver went into the hotel,
purchased liquors and cigars, "and," says the opinion, "thus
became a guest of the house." Citing McDonald v. Edgerton.
But the words "thus became" refer not only to the purchase of
the liquor but to the putting up of the team with the consent of
the hostler; and, furthermore, what was said upon that subject
in Fairchild v. Bentley was obiter dictum, because the judgment
of the lower court was reversed upon another ground, which the
court says (at page 156) was fatal to the judgment whether the
visitor at the hotel was a guest or not.

On the other hand, it was expressly held in Fitch v. Casler, 17
Hun, 126, by the General Term of the third department that the
purchase of liquor at an inn does not necessarily constitute the
purchaser a guest of the hotel. In that case the plaintiff went
to defendant's hotel to attend a dance for which invitations
had been sent out by the hotel proprietor. The dance ticket

purchased by plaintiff covered the night's supper, pay for plaintiff's horse and admission to the dance hall. The plaintiff also purchased drinks and cigars, but the court held that the relation of the innkeeper and guest did not exist because the plaintiff did not go to the hotel for the purpose of receiving the entertainment which a hotel extends to the public. Judge Learned in the opinion says: "The well-known principle of the liability of an innkeeper has been maintained in order to protect those who go to his house as to an inn or hotel." And, again, "It is true, as urged by the plaintiff, that even the purchasing of liquor, has been held sufficient, under some circumstances, to make one the guest of the innkeeper. This shows that it is not the amount of refreshments, but the character under which the purchaser buys them, which determines the relation of the parties."

In Carter *v.* Hobbs, 12 Mich. 52, under somewhat similar circumstances, it was held that the plaintiff was not a guest of the hotel, although the plaintiff purchased liquor and cigars; and the courts say: " To hold the defendant liable as an innkeeper, it must appear not only that the defendant kept the inn and that the goods were lost there, but that he was acting in the capacity of an innkeeper on the occasion when the goods were received and that the plaintiff was his guest; or, in other words, that the plaintiff visited the inn for the purposes which the common law recognizes as the purposes for which inns are kept." In Queen *v.* Rymer, 2 Law Rep. Q. B. D. 136, the court for crown cases reserved held that a person residing in the same town where a hotel is situate, entering the bar-room of a hotel intending merely to purchase a drink, does not become by such purchase a guest of the hotel. In Ingalsbee *v.* Wood, 36 Barb. 452, Judge Potter (at page 46) says the word "guest" seems to mean one who relies upon or adopts the inn as his home for the time being, though the length of time which the guest remains, it seems, will not affect his right as such, provided he lives there in his transitory character as a guest. In Castenhofer *v.* Clair, 10 Daly, 265, the court says: "It is not the fact that a person does or does not take lodging or partake of refreshment in an inn that makes him a guest; it is the motive with which he enters the place, whether to use it for the briefest period or the most trifling purposes as a public house or not."

The Revised Statutes, part 1, chap. 20, art. 8, § 72 (passed in 1827), provided that no keeper of an inn or tavern authorized

to retail spirituous liquors should on Sunday sell or dispose of them except "to lodgers in such inns or taverns or to persons actually traveling on that day, in the cases allowed by law." And this was the reenactment of a previous statute. In the act for the regulation of the liquor traffic, passed in 1857, the wording of the former provision was not retained; but it was provided that "no tavern or hotel-keeper * * * shall sell or give away intoxicating liquors or wines on Sunday * * * to any person whatsoever, as a beverage." But in the matter of Breslin, 45 Hun, 210, it was held by the General Term of the first department that the Legislature did not intend by the act of 1857 to prohibit an innkeeper from selling liquor to lodgers or guests of the inn as such, but only designed to prohibit the indiscriminate sale of intoxicating liquors by him to the general public on that day. The Excise Law, passed in 1892, contained an express permission for the sale of liquors on Sunday by the holder of an innkeeper's license "to guests of such hotel * * * to be drunk by the purchaser in the inn, tavern or hotel thereby licensed, with his meals or in his rooms or apartments therein, but not in the barroom or other similar room of the inn, tavern or hotel licensed."

The Liquor Law commonly called "The Raines Bill" differs in no material respect from the Excise Law of 1892 as to the sale of liquor to a guest by a hotel-keeper, and it seems probable that the Legislature, in passing both the Excise Law and the Liquor Tax Law, intended to leave the matter substantially as it had been ever since the enactment of the Revised Statutes; the words lodgers or travelers contained in the Revised Statutes, and used by the courts in construing the act of 1857, being replaced by the word guest in the Excise Law of 1892 and the Liquor Tax Act of 1896.

In my opinion, the class of persons to whom such sales on Sunday may lawfully be made has not been enlarged by the recent legislation, and it is not now permissible for a hotel-keeper to sell to any person unless that person occupies towards his house the peculiar relation of guest; unless the purchaser has come to the hotel to receive that protection, hospitality and entertainment which inns have always afforded and which under the law they are obliged to afford to their guests. A person strolling by the entrance of a hotel, who chances to turn in and buy a drink, does not thereby become in my opinion a guest within the

meaning of the term in the Liquor Tax Law. Something more must take place; there must be an intention on his part to adopt the inn for the time being, whether long or short, as his abiding place; he must have come *infra hospitium* and be received by the innkeeper in the capacity of a guest and be considered more than a mere purchaser of liquors and cigars, which the innkeeper offers for sale to the general public indiscriminately in the same manner as they are offered for sale by any other person authorized to sell the same.

The claim made by the defendants that the allegations in these indictments of the purchase of liquor of the defendants, who are hotel-keepers, is equivalent to the admission that the purchaser was a guest, cannot be sustained and the demurrers must be disallowed.