78  181
92  544

78  181
10ap626.

78  181
d46ap167

SOPHIA CROZIER, Appellant, *v.* GEORGE R. READ, Respondent.

*Negligence in omitting to prevent injury to another.*

A person becomes chargeable with negligence by a failure on his part to take a precaution which a reasonable man would have taken to prevent injury to another, as well as by a positively negligent act which results in damage.

APPEAL by the plaintiff, Sophia Crozier, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 10th day of November, 1893, upon the verdict of a jury directed by the court after a trial at the Westchester Circuit.

*William H. Robertson* and *Frederick W. Sherman,* for the appellant.

*Martin J. Keogh,* for the respondent.

PRATT, J.:

This is an appeal from a judgment in favor of the defendant, entered upon a verdict rendered by direction of the court at the close of the trial, notwithstanding plaintiff's request to go to the jury. The action was brought by the plaintiff to recover damages for severe and permanent injuries caused by her being thrown from her wagon by a collision with one of the defendant's horses. She testified that as she was driving with her infant daughter in Port Chester, she saw a pair of defendant's horses in charge of a boy — defendant's servant, McCarthy — coming towards her. The boy was riding one horse bareback and leading the other by a halter.

The horses were, from the time plaintiff first saw them in the dis-

tance, prancing and plunging about so that she was frightened. She turned far out to the right, so far that there was more than enough room for a two-horse team and large wagon to pass and still leave room on either side thereof. The boy, instead of turning out of the traveled road or of stopping or attempting to stop the horses, took them sufficiently near to cause the accident, and then, when just abreast of her, jerked or pulled upon the halter of the led horse, causing the latter to swerve across the road and back into plaintiff's wagon, thereby arresting its progress with such suddenness as to throw her and her child out of the wagon. She fell upon the stone roadway and injured her back, arm, shoulder and legs. A conflict arises between the testimony of the four witnesses, two on each side, as to whether or not the defendant's horses were misbehaving before the collision to such an extent that it was negligent to take them near the plaintiff's wagon.

We think, under the testimony as it stood at the close of the trial, it presented a proper question to be submitted to a jury.

The testimony on the part of the plaintiff might well justify the inference that the collision could have been avoided by the exercise of proper care on the part of defendant's servant. If, as claimed by the plaintiff, the horses just previous to the accident had become in a degree unmanageable and were cavorting from one side of the street to the other, a jury might well infer that it was the duty of the servant to either turn the horses out of the road or dismount and hold them by the heads until the plaintiff had safely passed.

A party can be charged with negligence in omitting to take a precaution which a reasonable man would have taken to prevent injury as well as by a positive negligent act which results in damage.

Again, a jury might have found that it was negligent, under the circumstances, to jerk the horses' heads just as the horses were about to pass the plaintiff. A sudden and violent jerk has a tendency, as everybody knows, to make a horse settle back, and his head being turned from the wagon, instead of towards it, the tendency would naturally be for him to back against the wagon. The jury might have thought that the boy negligently and unskillfully managed the horses at the instant of or just before the collision.

If the horses' heads had been towards the wagon there would have been no collision, but the horses would have backed away,

which is a conclusion that follows from the well-known disposition and habit of a horse not to run against any obstacle.

At all events a case is presented where twelve honest men might differ in their inferences as to the negligence of the defendant, and if they found in favor of the plaintiff it could not be said the verdict had no support in the evidence.

It appeared that the plaintiff was without fault.

The judgment should be reversed and a new trial granted, costs to abide the event.

BROWN, P. J., concurred; DYKMAN, J., not sitting.

Judgment reversed and new trial granted, costs to abide event.

