HARRIET A. GRINNELL, Respondent, *v.* WILLIAM G. TAYLOR, Appellant.

*Personal injuries, caused by a horse on a sidewalk — a village ordinance admissible in evidence — questions for the jury — use of a sidewalk — value of plaintiff's services in business, as damages — inference from a failure to produce evidence.*

Upon the trial of an action brought to recover damages resulting from personal injuries sustained by reason of the alleged negligence of the defendant in leading a horse along the sidewalk of a village street, it is proper to receive in evidence an ordinance of the village in the following language:

"No person shall ride on horseback, or lead or drive any horse, cattle, sheep or swine, or roll any wheelbarrow, on any of the sidewalks in said village otherwise than crossing into or out of their premises, or for the purpose of loading or unloading, or slide or skate on any sidewalk in the said village, under penalty of one dollar for each offense."

Where the evidence in such an action is conflicting, it is for the jury to determine whether, in the management of his horse, the defendant exercised the reasonable care which a man of ordinary prudence might be expected to exercise under like circumstances.

It is not necessary that a horse should be vicious in order to make the owner responsible for injury done by him through the owner's negligence. If the

most gentle horse be driven so negligently as to do injury to persons or property, the owner or driver will be responsible.

A person in a wagon is not entitled to the same use of a street in a village as a person on foot; a person on foot has the right to the sidewalk of a village street as against a person in a wagon. It is for the jury in such an action to determine whether it was negligent in the defendant to walk on the sidewalk of the village street and to lead his horse in the road at the side of the sidewalk so that the horse occasionally, and against his resistance, stepped upon the walk.

Upon the trial of an action brought to recover damages for personal injuries, it is proper for the court to submit to the jury, on the subject of damages, the question as to the value of the services of the plaintiff in her business, and to allow the jury to ascertain the loss resulting from her being interfered with in the transaction of her ordinary business.

Upon the trial of such an action the court was asked by the defendant to charge the jury that "if there was evidence at the command of the plaintiff  * * *  and she refuses to produce it or permit the defendant to use it, that the jury have the right to infer that such evidence would be unfavorable to the plaintiff's case." In response thereto the court observed : " I will allow the jury to take that circumstance and all other circumstances into consideration in their deliberation."

*Held*, that the answer made by the court was sufficiently favorable to the defendant and that no error was committed thereby.

APPEAL by the defendant, William G. Taylor, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 23d day of February, 1894, upon the verdict of a jury rendered after a trial at the Jefferson Circuit, and also from an order entered in said clerk's office on the 1st day of March, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Frederick W. Thomson*, for the appellant.

*C. W. Thompson*, for the respondent.

HARDIN, P. J. :

Plaintiff, in her complaint, alleges that on the 22d day of April, 1893, she was traveling on foot upon the sidewalk in the principal street in the village of Alexandria Bay, and that defendant, on the same occasion, was wrongfully, unlawfully and carelessly leading a horse along and upon the sidewalk, traveling in an opposite direction, " and the defendant so carelessly and negligently led and managed his horse aforesaid as to permit his said horse to attack and kick the plaintiff in her back, and in region of her back, while she

was upon or near said walk, which attack, and kicking as aforesaid, was inflicted upon plaintiff without fault or neglect on her part."

The defendant denied the allegations of the complaint, and alleged that the injuries received by the plaintiff were not due to any negligence, fault or carelessness of the defendant, but were received by the plaintiff and were caused on account of the plaintiff's own fault, negligence and want of care, and that plaintiff inflicted the injuries herself upon her own person. At the close of the plaintiff's evidence the defendant moved for a nonsuit upon the alleged grounds: "*First.* The plaintiff has failed to make out a cause of action against the defendant. *Second.* The plaintiff has failed to show any negligence upon the part of the defendant. *Third.* The plaintiff has failed to show viciousness upon the part of the defendant's horse, or that he had previous knowledge of any vice in the horse. *Fourth.* That the plaintiff, if there was any negligence, herself contributed to the alleged injury." The motion was denied, and at the time the court observed: "I will not hold as a matter of law the defendant in this case had a right to lead his horse in such close proximity to the sidewalk when people are passing along. I think I will leave it to the jury, under all the circumstances, to say whether the defendant exercised proper care in the management of this horse, considering where he was and all about it, what the horse was doing and all the facts." At the close of the whole evidence a similar motion on similar grounds was repeated by the defendant and an exception taken to the denial thereof.

It is contended by the appellant that the plaintiff failed to show any negligence on the part of the defendant. It appeared that the village of Alexandria Bay is incorporated, and has a population of about 1,500, and that Walton is one of the principal streets, and that on the 22d of April, 1893, the defendant was the owner of a young, strong horse about six years of age, and weighing some 1,250 pounds, and was leading him easterly along Walton street to a blacksmith shop, and there was some evidence that the defendant walked on the sidewalk on the northerly side of the street, and the horse was part of the time walking along the outer edge of the walk, playing, prancing, rearing, and occasionally stepping upon the sidewalk; and the defendant was walking abreast of his shoulder, and grasping the halter down to about eighteen inches from the head. The plaintiff was returning

home from a neighbor's upon the sidewalk, and met the defendant on the sidewalk near Coy's house, when she perceived the actions of the horse, and, appreciating the danger, stepped off the walk into Coy's yard away from defendant, when the horse kicked her, striking her with one foot in the small of the back on the left side over the kidneys. She did not fall, but staggered a few steps, and sat down on the piazza in front of Coy's house. After the kicking, the horse swung around crosswise of the street, with his head toward the walk, and there is evidence that the defendant then said, "Girl, did he hit you?" to which plaintiff replied, "Yes." Thereupon the defendant said, "Where did he hit?" and the plaintiff replied, "On my back." The defendant then went on to the blacksmith shop, where he left the horse, and returned to the house of Coy, picking up the books which had been dropped by plaintiff in the yard when the collision took place. After sitting on the piazza a few minutes plaintiff entered the house, when one Blanche Hibbard came down from upstairs into the room where the plaintiff sat, and bathed plaintiff's hands with hot water, and gave her some camphor. The plaintiff and Miss Hibbard went into the bedroom, where Miss Hibbard examined the plaintiff's back, and testified that she saw a large red spot about the size of a tea saucer in the plaintiff's back on the left side. This occurrence was about eleven o'clock in the forenoon, and the plaintiff, after remaining at Coy's house for a time, walked home a short distance, and, it is claimed, with the assistance of the defendant. Miss Hibbard testifies that during the time that defendant was at the house of Coy she "heard him say he was just going to tell Mrs. Grinnell to step off the walk." The witness McCue testifies that he had a conversation with the defendant a few days after the occurrence, and the witness says, "I met him on the sidewalk, and he asked me how the girl was. I told him I could hardly say; and he made the remark to me at that time, 'I was just agoing to tell her to leave the walk.' That was the conversation we had." In the course of the testimony delivered by the plaintiff herself she testifies that when she turned the corner coming up the street to Coy's from the lane going back up Walton street, she noticed the defendant coming with a horse at Keeler's. She says, "The horse was prancing, and I noticed Mr. Taylor's hand — from the horse's nose to his hand, a rope about like that (indicating); and I looked

up. He had hold of a rope at a distance from the horse's head of about half a yard, I should think. The other hand down like this (indicating) by his side swinging like that, and I started to leave the walk when I saw that, saw the horse. I just stepped off the walk into the yard of Coy's house when the horse hit me on the left side of my back and staggered me. I didn't go down, it just staggered me, and I put my hand up against the center of the piazza, there was three posts, and then I sat down there. When Mr. Taylor got the horse straightened around so that he could, he said, ' Girl, did he hit you ? ' and I said, ' Yes.' He said, ' Where did he hit ? ' I said, ' On my back.' He said, ' Did he hurt you much ? ' and I said, ' I don't think it did, you may go on, you need not wait.' After kicking me, the horse went out into Walton street because Mr. Taylor's back was to me when I was sitting on the porch after I sat down. The horse was standing crosswise on the street. It was a board walk, four feet wide, I think. The horse was stepping on the walk and on the ground, first one, and then just touching the walk." In the course of her cross-examination she says : "When I first saw the horse he wasn't in the road at all ; he was stepping on the side-walk and then on the grass, first one foot and then the other, by the side of the sidewalk ; it was the road side, and side of the sidewalk too. * * * He was not exerting himself very much ; he was not struggling with the horse to keep him in subjection ; he was walking right along fast. The halter was drawn kind of taut ; he was back from the horse's neck a little ways. * * * Before I came opposite the horse I hadn't got into the yard at all, I had just stepped onto the ground when the horse hit me ; I had just stepped off the walk onto the ground, hardly started to go when he hit me ; so that I was on the sidewalk, on the side of the walk next to the yard. Mr. Taylor was there next to the road ; he wasn't way out, he was in a little ways on the walk." Other witnesses were called who stated several circumstances observed by them, and related such parts of the occurrence as were known to them. The defendant, in the course of his testimony, says : "The road was muddy, and the walk there is somewhat lower than the road, mud and water, and it is pretty muddy there, and I stepped onto the walk there and followed that walk until I crossed Holland street, and continued till I

got to this lane, and there I crossed the street to the shop. The horse at this time was on the street side of the walk; he was not on the walk at any of those times. I was walking on the edge of the walk, leading the horse with my right hand; I had the slack of the halter in my left hand; I had my other hand up to the ring in the halter stall." He states that the horse was not prancing when he met the plaintiff, and passed her about opposite the corner of the Coy house; and in further description of what took place at the time of the alleged collision, he says she stood with her hands out, "seemed scared, that is what I would call it. She appeared scared, yes sir, in fact, was, so that it caused me to say, 'What is the matter, girl?' and she said, 'I think your horse kicked me.' 'Well,' said I, 'if he did, go and sit down on the piazza, and I will put my horse in the shop and come back.' So she walked in there over to the piazza." The defendant called some witnesses who observed some part of the occurrence relating to the alleged collision, tending to support the theory of the defendant that the horse did not strike the plaintiff. Plaintiff gave evidence to the effect that there was an ordinance of the village relating to the use of the sidewalks thereof in the following language: "No person shall ride on horseback, or lead or drive any horse, cattle, sheep or swine, or roll any wheelbarrow, on any of the sidewalks in said village otherwise than crossing into or out of their premises, or for the purpose of loading or unloading, or slide or skate on any sidewalk in the said village, under penalty of one dollar for each offense." The ordinance was properly received bearing upon the question of the alleged negligence of the defendant.

In *McGrath* v. *N. Y. C. R. R. Co.* (63 N. Y. 530) it was said: "The object of the ordinance was the security and protection of the travelers upon the streets. The defendant must be held to have known of its existence, and all persons within the city were bound to take notice of it as if it had been a law regularly enacted by the Legislature." Near the close of the opinion in that case it is said, viz.: "A violation or disregard of the ordinance, while not conclusive evidence of negligence, is some evidence upon the question to be submitted to the jury, with all the other evidence." Upon the whole evidence, although it was somewhat conflicting, we think it was a question for the jury to determine whether the defendant,

under the circumstances, was guilty of negligence in the management of his horse on the occasion when the alleged injury took place. The case presented differs very essentially from *Smith* v. *Matteson* (41 Hun, 216), as in that case there was no evidence "that the boy employed was careless in the discharge of his duties" in managing the cow, and there was "no evidence that the boy did or omitted an act which caused the accident." The evidence called upon the jury to determine whether the defendant failed to use, in the management of his horse, "the reasonable care which a man of ordinary prudence might be expected to exercise under like circumstances." Such was the rule of law stated in *Moynahan* v. *Wheeler* (117 N. Y. 285) by DANFORTH, J., near the close of his opinion.

During the trial the judge properly ruled that the defendant could not be made liable by reason of any supposed viciousness of the horse as the evidence did not establish it, or that the defendant had knowledge that the horse was vicious. (*Van Leuven* v. *Lyke*, 1 N. Y. 515.) The doctrine of that case was explained in *Moynahan* v. *Wheeler* (*supra*).

In the course of the opinion delivered in *Dickson* v. *McCoy* (39 N. Y. 400), which case involved an inquiry as to whether the defendant had been guilty of negligence in suffering his horse to go at large upon the sidewalk, it was stated that the negligence of the defendant rendered him liable. The following language was used : "It is not necessary that a horse should be vicious to make the owner responsible for injury done by him through the owner's negligence. * * * If the most gentle horse be driven so negligently as to do injury to persons or property, the owner or driver will be responsible. Certainly, not less so if the horse be negligently turned loose in the street without restraint or control." We are of the opinion that the trial judge properly refused to nonsuit the plaintiff, and that he properly instructed the jury upon the subject of the defendant's liability, if found guilty of negligence in the management of his horse on the occasion when the injury occurred to the plaintiff. (*Crozier* v. *Reed*, 28 N. Y. Supp. 914.)

(2) We are of the opinion that, upon the evidence produced at the trial, the court properly submitted the question as to whether the plaintiff, on the occasion, was guilty of contributory negligence.

There was evidence tending to support the finding as made by the jury that the plaintiff was free from any negligence which in any manner contributed to the injury which she received.

(3) We think that no error was committed in refusing to charge the jury that there are no limitations upon the right to the use of the highway except the boundaries thereof. If the proposition intended to have the court rule contrary to the ordinance of the village, it was properly refused. The court had already stated that " a person in a wagon is not entitled to the same use of the street as a person on foot. A person on foot has the right to the sidewalk as against a person in a wagon."

(4) The court was asked to charge the jury that " it was not of itself negligence for the defendant to walk upon the sidewalk and lead his horse in the road at the side of the sidewalk, notwithstanding the horse occasionally, and against his resistance, stepped his foot upon the walk." In response to that request the court observed : " I leave it to the jury to say whether, under the circumstances of the case, it was negligence." We think the court committed no error in that ruling. We think no error was committed by the court in submitting to the jury, on the subject of damages, the inquiry as to the value of the services of the plaintiff in her business, and allowing the jury to ascertain the loss by reason of her being interfered with in the transaction of her ordinary business. (*Walker* v. *The Erie Railway Co.*, 63 Barb. 260 ; *Ehrgott* v. *The Mayor*, 96 N. Y. 276, and cases there cited.)

In *Kessel* v. *Butler* (53 N. Y. 612) a witness was asked "how much money he made prior to the injury from work at his trade," and objections to it were overruled, and it was held that no error was committed.

In *Nash* v. *Sharpe* (19 Hun, 366) it was said : " It seems to be settled that, in an action for loss of services, evidence of the nature and extent of the party's business, or how much he was earning from his business, or realizing from fixed wages, is proper upon the question of damages."

In *McIntyre* v. *N. Y. C. R. R. Co.* (37 N. Y. 287) it was held that an inquiry as to what the deceased party usually earned was proper in estimating damages ; and at the close of the opinion in *Grant* v. *City of Brooklyn* (41 Barb. 385) it is said : " Indeed,

where the damages are for the loss of services, I see no evidence so unobjectionable and so reliable as that which shows how much the party was earning from his business, or realizing from fixed wages, at the time to which the loss refers." (*Pill* v. *Brooklyn Heights R. R. Co.*, 27 N. Y. Supp. 230.)

(5) The court was asked to charge the jury that, "If there was evidence at the command of the plaintiff, * * * and she refuses to produce it, or permit the defendant to use it, that the jury have the right to infer that such evidence would be unfavorable to the plaintiff's case." In response thereto the court observed : "I will allow the jury to take that circumstance and all other circumstances into consideration in their deliberation." We think that the answer made by the court was sufficiently favorable, and that no error was committed. (*Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 558; *Crary* v. *Crary*, 18 N. Y. Supp. 753.)

(6) We think the verdict was not against the weight of evidence, and that the questions of fact were properly determined by the jury, and that the damages allowed to the plaintiff are not excessive. (*Fisher* v. *Smith*, 18 N. Y. Supp. 752; *Crozier* v. *Read*, 28 id. 915.)

The judgment and order should be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.