·in the month of February, 1892, while the transactions had by defendant with Dresser as to his enterprise had not their inception until the following month.

The judgment is affirmed, with costs.    All concur.

(13 Misc. Rep. 435.)

### QUILL v. EMPIRE STATE TEL. CO.

(Circuit Court, Cayuga County.  January, 1895.)

1. NEGLIGENCE—UNFORESEEN CONTINGENCY.
     Where one of a large number of glass insulators, by reason of improper adjustment, falls from a pole 90 feet high, maintained by defendant for stringing electric wires, and injures a person in the street below, the circumstances are not so extraordinary as to relieve defendant of liability.

2. SAME—ACTS OF LICENSEE.
     A telephone company, which erects and maintains a pole for stringing wires, is liable for injuries caused by the fall of an improperly adjusted insulator. though the cross-arm from which the insulator fell was occupied by the wires of a telegraph company under a contract with the telephone company.

3. SAME—PROXIMATE CAUSE.
     Plaintiff was injured by the fall of an insulator from defendant's telephone pole.  The insulator, though not properly secured, would not have fallen had it not been knocked off by a third person, for whose acts defendant was not responsible; nor would the acts of such third person have knocked it off had it been securely attached.  Held, that both the defective attachment of the insulator and the act of the third person were proximate causes of the accident, and it might, therefore, be attributed to either or both of them.

Action by Jeremiah Quill against the Empire State Telephone Company to recover damages for personal injuries.  There was a verdict in favor of plaintiff, and defendant moves for a new trial on the minutes.    Denied.

Plaintiff's injuries were alleged to have been occasioned by the negligence of defendant, which is a duly-organized corporation, owning and using the necessary poles, wires, and other appliances for the proper operation of its business of transmitting telephonic communications with lines extending through some seven counties of this state, including the county of Cayuga. At the junction of Genesee and Exchange streets, in the city of Auburn, it has caused to be erected a pole, 90 feet in length, upon which it has placed about 20 cross-arms which extend downward from the top of the pole, and into these cross-arms wooden pegs have been inserted at convenient intervals, to which are attached glass insulators, for the purpose of enabling the defendant to string and insulate its wires.  These insulators are hollow cylinders, and upon the inner surface thereof is a thread which corresponds with another thread cut upon the wooden peg, so that, when properly adjusted, it is firmly attached to the peg, and cannot be detached from the cross-arms, unless either the peg or insulator is broken.  At the time of the injury to the plaintiff, the top cross-arm was used by the American Telephone Company.  The next two or three were not in use at all, but the next thirteen were used by the defendant, while the lowest one of all, by an arrangement existing between the defendant and the Western Union Telegraph Company, was used by the latter corporation for the purpose of stringing thereon some of its wires.  It appears that a wire belonging to the fire-alarm system of the city of Auburn had in some manner come into contact with or was crossed by one of the wires passing over this pole, and it became necessary to disconnect the same.  To accomplish this, a lineman in the employ of the city ascended the pole on the 27th day of June, 1891; and, in attempting to raise a wire, it caught under

an insulator, threw it off from the peg upon which it rested, and, in falling to the ground, it struck the plaintiff, who was standing upon the sidewalk, in close proximity to the pole, upon the left shoulder, with such force as to produce an injury of so serious a character that the arm was thereby rendered practically useless, and has remained so ever since. The insulator which fell was the third one from the inside upon the lowest cross-arm,—the one used by the Western Union Telegraph Company. It was produced and identified upon the trial, and appeared to be smaller in size than those used generally by that company, but of the same size and style as those used by the defendant. The evidence tended to show that it was simply placed upon the peg from which it fell without having been screwed on, or in any other manner firmly attached. There was also evidence that, at the time of the accident, there were other insulators of the same size upon the cross-arm in question, to which no wires were attached, and that the telegraph company did occasionally make use of this style of insulator. The case was submitted to the jury, and a verdict of $4,000 in favor of the plaintiff resulted.

Underwood, Storke & Seward, for the motion.
Rich & Aiken, opposed.

ADAMS, J. The only questions argued upon this motion were those which involve the plaintiff's right to maintain his action against this defendant, the contention being that the evidence fails to establish any negligence upon the part of any one to which can be justly attributed the injury of which the plaintiff complains, but that, if any is proven, it is negligence upon the part of the Western Union Telegraph Company or an employé of the city of Auburn, and not upon the part of the defendant. It will be well, therefore, to consider these several propositions in the order in which they are stated; and at the outset it may be conceded, as was suggested in the charge to the jury, that the circumstances attending the plaintiff's injury were somewhat extraordinary in their nature. That the insulator which caused the injury should have been lifted from its resting place at the precise moment of time when the plaintiff was standing in a position where he could be struck as it fell is a circumstance certainly peculiar to this case, and, because it is exceptional, it is argued that the defendant is under no obligation to guard against a contingency which there was so little reason to anticipate.

It is unquestionably the rule, and a very just one, that no person can be charged with a negligent omission of duty for a failure to anticipate and guard against some contingency which would not have arisen save under circumstances which are exceptional. Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858. The mere fact, however, that a similar accident never before happened, does not necessarily repel the charge of negligence (Cleveland v. Steamboat Co., 125 N. Y. 299, 26 N. E. 327); the true test being, as stated in the last case cited, whether it is one "which might reasonably have been anticipated, or one the occurrence of which would not in the minds of reasonable men be in the highest degree unlikely." Measured by this standard, it is obvious, I think, that the case presented questions of fact which the plaintiff was entitled to have a jury pass upon; for, although it may be claimed with great propriety that there was no good reason for anticipating an accident

in all its details like the one in question, yet the possibility of a personal injury occurring by reason of the failure to properly adjust a glass insulator, of no inconsiderable size and weight, to its proper place upon a telephone pole, can hardly be said to be so remote as to justify the claim that "in the highest degree it is unlikely to happen." Here was a pole 90 feet in height, with 20 cross bars or arms attached to it, and upon these arms were pegs for possibly 200 insulators, and over them were stretched a vast number of wires. This structure was located at the junction of two thoroughfares in a flourishing city, and by and around it hundreds of people were passing daily. The evidence discloses the fact that it frequently became necessary for the employés of the different companies using the pole to ascend it for the purpose of readjusting the wires, and, the better to accomplish this, a bridge had been constructed from an adjoining building which rendered the pole and wires easy of access. Now, if this glass insulator was simply placed upon its peg and tipped over upon one side, without being screwed on, as described by one of the plaintiff's witnesses, is it, after all, remarkable that in the frequent changing of the wires, or in the adjustment of new ones, it should be jerked off and made to fall upon some person passing along the street below? Or is it inconceivable that even the swaying of the wires by a brisk wind might have produced the same result? In making these suggestions, I am not unmindful of the attempted demonstration upon the part of the defendant of the utter impossibility of displacing an insulator from one of these wooden pegs, even when it is not firmly attached by means of the screw; but the evidence of the witness Hurlburt cannot be ignored, and, if it could be, the fact remains that the insulator was in some manner displaced and thrown to the ground; and this, in the absence of any explanatory circumstance, would seem to establish a prima facie case of negligence upon the part of some one. Mullen v. St. John, 57 N. Y. 567; Crozier v. Read, 78 Hun, 181, 28 N. Y. Supp. 914; Morris v. Strobel & Wilken Co., 81 Hun, 1, 30 N. Y. Supp. 571.

The claim that the fault, if any, was that of Hurlburt, and not of this defendant, was submitted to the jury, and they were instructed that if the insulator, having been properly attached, was displaced simply because of the force which was employed by him in raising the wire of the fire-alarm telegraph, the plaintiff could under no possible circumstances recover. The issue thus raised having been submitted to the jury, their verdict must be regarded as conclusive upon the subject, and therefore it may be assumed that the insulator was placed upon the wooden peg in a careless and negligent manner, and so we have fairly presented for consideration the question as to the party who is responsible therefor.

The defendant sought to escape responsibility for the accident by claiming that the cross-arm from which the insulator dropped was used exclusively by the Western Union Telegraph Company, and that, therefore, that company, and not the defendant, should be charged with the consequences of the negligent act. It is true that the company did use this cross-arm, so far as it was used at

all; nevertheless, the evidence was such as would have warranted the jury in concluding that the insulator was placed in position by the defendant, for the telegraph company certainly had no wire attached to it, although it appears that one ran along by the side of it, and, as has been stated, it was of the same size and kind as the insulators used by the defendant. But, assuming that the telegraph company did cause the insulator to be placed upon the peg in the manner described by the plaintiff's witnesses, yet I fail to see how this relieves the defendant from all share of responsibility for the result which followed. It is expressly admitted by the answer that the pole in question was erected and maintained by the defendant, and, if it saw fit to permit some other person or corporation to use a single cross-arm as a matter of convenience, it, nevertheless, appeared, and was not disputed, that the defendant remained in virtual possession of the entire structure, and exercised a supervisory power over it, for its employés were constantly climbing the pole to readjust wires, and its superintendent testified that it was his business to inspect it, and that he knew what its condition was at the time of the accident. It matters little, therefore, what was the precise relation existing between the defendant and the telegraph company; for, if it was that of lessor and lessee, the pole being practically in the possession and certainly under the control of the former, it became charged with the duty of keeping it in such a condition of safety that travelers upon the highway should be exposed to no unnecessary hazard therefrom (Khron v. Brock, 144 Mass. 516, 11 N. E. 748; Gray v. Gas Light Co., 114 Mass. 149; Inhabitants of Milford v. Holbrook, 9 Allen, 17); and there is no reason why the same rule should not apply where the partial occupation is that of a mere licensee. In either case, so far as the present action is concerned, the negligence complained of may be predicated of the dangerous condition of the insulator, or the failure to discover its condition by the omission of proper inspection. In other words, the defendant, owning, maintaining, and controlling the pole, was responsible for any negligent condition of its appurtenances which it permitted to exist by its passive acquiescence, whether such acquiescence followed actual knowledge or resulted from failure to acquire knowledge. Gottlieb v. Railroad Co., 100 N. Y. 462, 3 N. E. 344; Goodrich v. Railroad Co., 116 N. Y. 398, 22 N. E. 397; Gray v. Gas Light Co., supra; Coupland v. Hardingham, 3 Camp. 398; Anderson v. Railway Co. (Com. Pl. N. Y.) 21 N. Y. Supp. 1.

But it is further insisted by the defendant's counsel that, even though there was an omission to fasten the insulator securely upon the cross-arm, such omission cannot be said to have been the proximate cause of the plaintiff's injury. It is often a difficult matter to determine with any degree of accuracy what is the "proximate cause" of an accident, and it frequently happens in cases of negligence that several causes concur to produce certain results, one or all of which may be denominated "proximate." This is peculiarly true of the case in hand, for it is absolutely certain that the plaintiff would have escaped injury upon the day in question but for

the intervention of a third party, for whose acts the defendant is in no wise responsible, so that it may be asserted with equal certitude that the raising of the fire-alarm wire by Hurlburt was a proximate cause of the consequences which followed. But, on the other hand, had the insulator been firmly attached to the peg upon which it rested,—and once more, in considering the question, it must be assumed it was not,—the raising of the wire probably would not have displaced it and caused its fall. It would seem, therefore, that the case comes fairly within the rule which holds that where several proximate causes contribute to an accident, either of which is an efficient cause, without which the accident would not have happened, it may be attributed to any or all of them. Ring v. City of Cohoes, 77 N. Y. 83; Phillips v. Railroad Co., 127 N. Y. 657, 27 N. E. 978.

The questions discussed upon this motion, as well as upon the trial, possess great interest, and are not wholly divested of embarrassing features; but mature reflection and careful consideration, with the aid of such light as is furnished by the authorities cited, incline me to believe that the case was properly submitted to the jury, and that the verdict should not be disturbed.

The motion is therefore denied, with $10 costs.