JEREMIAH QUILL, Respondent, v. THE EMPIRE STATE TELEPHONE AND TELEGRAPH COMPANY, Appellant.

*Negligence — insulator falling from a cross arm of a telegraph pole and injuring a passer-by — liability of the party controlling the pole, although another party has the exclusive right to use the cross arm — several proximate causes.*

Upon the trial of an action brought to recover damages resulting from the alleged negligence of the defendant, a telephone and telegraph corporation, it appeared that the defendant owned and maintained a pole for wires ninety feet high, which stood at the junction of two streets in a thickly settled part of the city of Auburn, and had twenty cross arms which would contain about 200 insulators; that the method by which an insulator was adjusted was to have a thread run upon the inside of it, which should bind upon a similar thread cut or raised upon the surface of a wooden peg, which peg was fastened into the cross arm; that an insulator thus affixed could not be detached unless the peg of the insulator itself was broken off; that at the time of the accident the lowest cross arm was, under an agreement with the defendant, used by the Western Union Telegraph Company, at which time a wire of the city fire alarm telegraph had become crossed with the wires upon the pole in question, and a lineman employed by the city of Auburn went upon the pole to clear the wire, in attempting to do which the wire caught under an insulator on the lowest cross arm and the insulator fell to the ground, seriously injuring the plaintiff, who was standing on the sidewalk near the pole. The evidence

tended to show that the insulator in question was put upon the lower cross arm by the defendant and not by the Western Union Telegraph Company.

Upon the trial the plaintiff claimed that the insulator was not properly affixed nor screwed on to the peg, and the court submitted that question to the jury. The defendant, upon its part, claimed that the cross arm from which the insulator dropped was used exclusively by the Western Union Telegraph Company, and that, therefore, that company should be charged with the consequences of the negligent act.

Upon an appeal from a judgment in favor of the plaintiff,

*Held*, that it was immaterial what precise relations existed between the defendant and the Western Union Telegraph Company, and that, whether or not the defendant affixed the insulator upon the pole, it was liable;

That, as the defendant owned, maintained and controlled the pole, it was responsible for any negligent condition of its appurtenances which it permitted to exist by passive acquiescence, and that this was true whether such acquiescence followed actual knowledge or resulted from a failure to acquire knowledge;

That while it might be true that, if the city lineman had not lifted the wire in question, the insulator would not have fallen when it did it, it must be assumed, in view of the verdict, that the insulator would probably not have fallen when the lineman raised the wire if the insulator had been properly affixed to the peg;

That, therefore, the defendant was liable within the rule, that where several proximate causes contribute to an accident, and either of them is an efficient cause, without which the accident would not have happened, the accident may be attributed to any one cause or to all of them;

That, although the accident was exceptional in its nature, it was one, the occurrence of which would not, in the minds of reasonable men, be in the highest degree unlikely, and that it was consequently an accident against which it was the duty of the defendant to guard the public.

APPEAL by the defendant, The Empire State Telephone and Telegraph Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cayuga on the 19th day of January, 1895, upon the verdict of a jury rendered after a trial at the Cayuga Circuit, and also from an order entered in said clerk's office on the 18th day of June, 1895, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant, which is a duly organized corporation, owning and using the necessary poles, wires and other appliances, for the proper operation of its business of transmitting telephonic communications, with lines extending through some seven counties of this State, including the county of Cayuga.

At the junction of Genesee and Exchange streets, in the city of Auburn, it has caused to be erected a pole, ninety feet in height, upon which it has placed about twenty cross arms which extend downwards from the top of the pole, and into these cross arms wooden pegs have been inserted at convenient intervals, to which are attached glass insulators, for the purpose of enabling the defendant to string and insulate its wires.

These insulators are hollow cylinders and upon the inner surface thereof is a thread which corresponds with another thread cut upon the wooden peg, so that, when properly adjusted, it is firmly attached to the peg and cannot be detached from the cross arms unless either the peg or insulator is broken.

At the time of the injury to the plaintiff, the top cross arm was used by the American Telephone Company; the next two or three were not in use at all, but the next thirteen were used by the defendant, while the lowest one of all, by an arrangement existing between the defendant and the Western Union Telegraph Company, was used by the latter corporation for the purposes of stringing thereon some of its wires.

It appears that a wire belonging to the fire alarm system of the city of Auburn had, in some manner, come into contact with, or was crossed by, one of the wires passing over this pole and it became necessary to disconnect the same. To accomplish this, a lineman in the employ of the city ascended the pole upon the 27th day of June, 1891, and in attempting to raise a wire it caught under an insulator, threw it off from the peg upon which it rested, and in falling to the ground it struck the plaintiff, who was standing upon the sidewalk, in close proximity to the pole, upon the left shoulder, with such force as to produce an injury of so serious a character that the arm was thereby rendered practically useless, and has remained so ever since.

The insulator which fell was the third one from the inside upon the lowest cross arm, the one used by the Western Union Telegraph Company. It was produced and identified upon the trial and appeared to be smaller in size than those used generally by that company, but of the same size and style as those used by the defendant.

The evidence tended to show that it was simply placed upon the

peg from which it fell without having been screwed on, or in any other manner firmly attached.

There was also evidence that, at the time of the accident, there were other insulators of the same size upon the cross arm in question, to which no wires were attached, and that the telegraph company did occasionally make use of this style of insulator.

The case was submitted to the jury and a verdict of $4,000 in favor of the plaintiff resulted.

*Underwood, Storke & Seward,* for the appellant.

*Rich & Aiken,* for the respondent.

Present — Lewis, Bradley and Ward, JJ.

Judgment and order affirmed on opinion of Adams, J.

The opinion of Adams, J., was as follows:

Adams, J.:

The only questions argued upon defendant's motion for a new trial at Special Term were those which involve the plaintiff's right to maintain his action against this defendant, the contention being that the evidence fails to establish any negligence upon the part of any one to which can be justly attributed the injury of which the plaintiff complains, but that if any is proven, it is negligence upon the part of the Western Union Telegraph Company, or an employee of the city of Auburn, and not upon the part of the defendant.

It will be well, therefore, to consider these several propositions in the order in which they are stated, and at the outset it may be conceded, as was suggested in the charge to the jury, that the circumstances attending the plaintiff's injury were somewhat extraordinary in their nature. That the insulator which caused the injury should have been lifted from its resting place at the precise moment of time when the plaintiff was standing in a position where he could be struck as it fell, is a circumstance certainly peculiar to this case, and because it is exceptional, it is argued that the defendant was under no obligation to guard against a contingency which there was so little reason to anticipate.

It is unquestionably the rule, and a very just one, that no person can be charged with a negligent omission of duty for a failure to anticipate and guard against some contingency, which would not have arisen save under circumstances which are exceptional. (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434.) The mere fact, however, that a similar accident never before happened does not necessarily repel the charge of negligence (*Cleveland* v. *N. J. S. Co.*, 125 N. Y. 299), the true test being, as stated in the last case cited, whether it is one which " might reasonably have been anticipated, or if its occurrence would not, in the minds of reasonable men, be in the highest degree unlikely."

Measured by this standard, it is obvious, I think, that the case presented questions of fact which the plaintiff was entitled to have a jury pass upon, for although it may be claimed with great propriety that there was no good reason for anticipating an accident in all its details like the one in question, yet the possibility of a personal injury occurring by reason of the failure to properly adjust a glass insulator, of no inconsiderable size and weight, to its proper place upon a telephone pole can hardly be said to be so remote as to justify the claim that it is " in the highest degree unlikely " to happen. Here was a pole ninety feet in height with twenty cross bars or arms attached to it, and upon these arms were pegs for possibly 200 insulators, and over them were stretched a vast number of wires. This structure was located at the junction of two thoroughfares in a flourishing city, and by and around it hundreds of people were passing daily. The evidence discloses the fact that it frequently became necessary for the employees of the different companies using the pole to ascend it for the purpose of readjusting the wires, and, the better to accomplish this, a bridge had been constructed from an adjoining building which rendered the pole and wires easy of access. Now, if this glass insulator was simply placed upon its peg and tipped over upon one side without being screwed on, as described by one of the plaintiff's witnesses, is it after all remarkable that in the frequent changing of the wires, or in the adjustment of new ones, it should be jerked off and made to fall upon some person passing along the street below? Or is it inconceivable that even the swaying of the wires by a brisk wind might have produced the same result? In making these suggestions, I

am not unmindful of the attempted demonstration upon the part of the defendant, of the utter impossibility of displacing an insulator from one of these wooden pegs, even when it is not firmly attached by means of the screw, but the evidence of the witness Hulbert, the lineman, who was trying to disentangle the wires, cannot be ignored, and, if it could be, the fact remains that the insulator was in some manner displaced and thrown to the ground, and this, in the absence of any explanatory circumstances, would seem to establish a *prima facie* case of negligence upon the part of some one. (*Mullen* v. *St. John,* 57 N. Y. 567; *Crozier* v. *Read,* 78 Hun, 181; *Morris* v. *The S. & W. Co.,* 81 id. 1.)

The claim that the fault, if any, was that of Hulbert, and not of this defendant, was submitted to the jury, and they were instructed that, if the insulator having been properly attached, was displaced simply because of the force which was employed by him in raising the wire of the fire alarm telegraph, the plaintiff could under no possible circumstances recover. The issue thus raised, having been submitted to the jury, their verdict must be regarded as conclusive upon the subject, and, therefore, it may be assumed that the insulator was placed upon the wooden peg in a careless and negligent manner, and so we have fairly presented for consideration the question as to the party who is responsible therefor.

The defendant sought to escape responsibility for the accident by claiming that the cross arm from which the insulator dropped was used exclusively by the Western Union Telegraph Company, and that, therefore, that company, and not the defendant, should be charged with the consequences of the negligent act. It is true that the company did use this cross arm, so far as it was used at all; nevertheless, the evidence was such as would have warranted the jury in concluding that the insulator was placed in position by the defendant, for the telegraph company certainly had no wire attached to it, although it appears that one ran along by the side of it, and, as has been stated, it was of the same size and kind as the insulators used by the defendant.

But, assuming that the telegraph company did cause the insulator to be placed upon the peg in the manner described by the plaintiff's witnesses, yet I fail to see how this relieves the defendant from all share of responsibility for the result which followed.

It is expressly admitted by the answer that the pole in question was erected and maintained by the defendant, and if it saw fit to permit some other person or corporation to. use a single cross arm as a matter of convenience, it nevertheless appeared, and was not disputed, that the defendant remained in virtual possession of the entire structure, and exercised a supervisory power over it, for its employees were constantly climbing the pole to readjust wires, and its superintendent testified that it was his business to inspect it, and that he knew what its condition was at the time of the accident.

It matters little, therefore, what was the precise relation existing between the defendant and the telegraph company, for if it was that of lessor and lessee, the pole being practically in the possession, and certainly under the control, of the former, it became charged with the duty of keeping it in such a condition of safety that travelers upon the highway should be exposed to no unnecessary hazard therefrom (*Khron* v. *Brock*, 144 Mass. 516; *Gray* v. *Boston Gas Light Co.*, 114 id. 149; *Milford* v. *Holbrook*, 9 Allen, 17), and there is no reason why the same rule should not apply where the partial occupation is that of a mere licensee. In either case, so far as the present action is concerned, the negligence complained of may be predicated of the dangerous condition of the insulator, or the failure to discover its condition by the omission of proper inspection.

In other words, the defendant owning, maintaining and controlling the pole, was responsible for any negligent condition of its appurtenances which it permitted to exist by its passive acquiescence, whether such acquiescence followed actual knowledge or resulted from failure to acquire knowledge. (*Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462; *Goodrich* v. *The N. Y. C. & H. R. R. R. Co.*, 116 id. 398; *Gray* v. *Boston Gas Light Co.*, *supra*; *Coupland* v. *Hardingham*, 3 Campb. 398; *Anderson* v. *Manhattan Ry. Co.*, 21 N. Y. Supp. 1.)

But it is further insisted by the defendant's counsel that, even though there was an omission to fasten the insulator securely upon the cross arm, such omission cannot be said to have been the proximate cause of the plaintiff's injury.

It is often a difficult matter to determine with any degree of accuracy what is the "proximate cause" of an accident, and it

frequently happens in cases of negligence that several causes concur to produce certain results, one or all of which may be denominated " proximate."

This is peculiarly true of the case in hand, for it is absolutely certain that the plaintiff would have escaped injury upon the day in question, but for the intervention of a third party, for whose acts the defendant is in no wise responsible, so that it may be asserted with equal certitude that the raising of the fire alarm wire by Hulburt was a proximate cause of the consequences which followed. But, on the other hand, had the insulator been firmly attached to the peg upon which it rested — and once more, in considering this question, it must be assumed it was not — the raising of the wire probably would not have displaced it and caused its fall. It would seem, therefore, that the case comes fairly within the rule which holds that where several proximate causes contribute to an accident, either of which is an efficient cause, without which the accident would not have happened, it may be attributed to any or all of them. (*Ring* v. *The City of Cohoes*, 77 N. Y. 83; *Phillips* v. *N. Y. C. & H. R. R. R. Co.*, 127 id. 657.)

The questions discussed upon this motion, as well as upon the trial, possess great interest and are not wholly divested of embarrassing features, but mature reflection and careful consideration, with the aid of such light as is furnished by the authorities cited, incline me to believe that the case was properly submitted to the jury, and that the verdict should not be disturbed.

The motion is, therefore, denied, with ten dollars costs.