John Haines, Respondent, *v.* Patrick H. Keahon, Appellant.

*Negligence — injury in a street from a led horse struck by a passing wagon.*

In an action to recover damages for personal injuries, it appeared that a servant in the employ of the defendant was riding one of the defendant's horses along a public street and leading another by a strap or halter; that the led horse upon being struck by a wagon approaching from the rear jumped forward, and while the rider was doing his best to quiet him, backed and struck the plaintiff, who was loading a wagon in the street.

It also appeared that the horses were quiet and gentle and that the rider, who was an experienced horseman, had taken them through the street in this manner every morning for a year, without accident.

There was no evidence that it was dangerous to lead a quiet horse through the street, or that the method of leading the horse was improper or dangerous, or that the horse would not have acted in the same way if the defendant's employee had been upon the ground instead of riding the other horse.

*Held*, that there was no evidence to justify a finding that the defendant was negligent, and that a judgment entered on a verdict in favor of the plaintiff should be reversed.

PATTERSON and O'BRIEN, JJ., dissented.

APPEAL by the defendant, Patrick H. Keahon, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of April, 1899, upon the verdict of a jury for $2,750, and also from an order entered in said clerk's office on the 28th day of April, 1899, denying the defendant's motion for a new trial made upon the minutes.

*Robert Thorne*, for the appellant.

*Edward L. Godfrey*, for the respondent.

INGRAHAM, J.:

The plaintiff was injured by a horse belonging to the defendant. It appeared from the evidence that the plaintiff was a vendor of vegetables, and on the morning of June 26, 1897, went to Gansevoort market to make purchases; that while standing on the street engaged in loading his cart, two horses belonging to the defendant came along Gansevoort street going toward Greenwich street, the one on the north side being ridden by an employee of the defendant, and the other being led by a strap or halter; that as the horses came along close to where the plaintiff was standing, the led horse shied out, as the witness stated, "evidently having been frightened from the rear. He pulled upon the rein or strap and started to run * * *. The driver quieted him down by pulling him up and starting again, and he came to his place." The two horses then proceeded about fifteen feet, when the horse again started, "evidently being frightened from the rear" by a wagon coming up the street. Both horses then swung around until they pointed in the direction from which they had come, to the east, and in turning the led horse pressed the plaintiff against the wagon. During this

time the defendant's employee was doing his best to take care of the horses. This was the only evidence offered by the plaintiff as to the occurrence. The defendant then called the rider of the horse, who testified that he had been employed by the defendant to drive these horses for something over a year prior to the accident; that on the morning of June 26, 1897, he went to the stables in Greenwich street, harnessed the horses and took them to the store yard where the defendant kept his trucks; that he went down to Gansevoort street riding the off horse, leading the nigh horse with a check rein; that as he was coming along Gansevoort street a wagon came up behind him and ran up against the nigh horse; that when the horse was hit he jumped forward; that he got the horse up close to the led horse when he made another break to get away; that the led horse then slipped and hit the plaintiff a little above the ankle; that he had never seen an ugly act in either one of the horses since he had driven them; that they were gentle and kind in every way; that the witness had been in the habit of leading them in that way every morning; that he had been in charge of horses for over twenty-five years; that the horse did not rear or kick, but was run into just a few feet from the plaintiff; that as the horse started to run he made a drive forward, and as the witness pulled him around, the plaintiff, who was standing on the outside of the wagon between the fore and hind wheels, was hit by the horse, and his statement of the occurrence was sustained by several witnesses. The substantial facts of this case are thus undisputed, the witnesses for the plaintiff and the defendant both concurring in the cause of the accident. There is no evidence from which the inference could be drawn that it was dangerous to lead a quiet horse of this character through the street or that this method of leading a horse was improper or dangerous, or that the horse would not have acted in the same way if the defendant's employee had been upon the ground instead of riding the other horse. The fact that this horse had been driven in this way for a year without any accident was of itself evidence to show that no one could have anticipated that the horse would have been run into by another wagon, and that in consequence thereof have backed up against the plaintiff.

The rule stated in *Dickson* v. *McCoy* (39 N. Y. 400) and kindred cases does not apply. There a recovery was sustained upon the

ground that the defendant's horse was negligently turned loose in the street without constraint or control. The court said : " The only question in the case was that propounded by the court to the jury, ' was the defendant guilty of negligence in permitting the horse to go at large in the street ? ' * * * To permit a horse of this description to run at large upon the streets of a city, manifestly endangers the safety of the people passing in the streets ; and the danger is none the less if the running and kicking are mere playful acts of the horse than if prompted by a vicious disposition. The danger results from the acts of the horse, not his disposition." In this case the horse was not unattended in the street, but was being led by a competent man who had been accustomed to using horses for twenty-five years in a manner which, so far as appears, was entirely proper.

We also think that there was no evidence to show that this employee of the defendant was negligent in handling the horse at the time of the accident. The horse was quietly walking along the street, apparently under perfect control. He was suddenly run into by a wagon, when he jumped forward, frightened by the blow which he received, then backed and struck the plaintiff. The man in charge of the horse was doing all he could do to quiet him. So far as appears, there was nothing that the man in charge of the horse did that he should not have done, and nothing that he could have done, and did not do, would have prevented the accident. The whole occurrence appears to have been an accident resulting from the wagon running into the horse. The plaintiff relies upon the case of *Crozier* v. *Read* (78 Hun, 181, and on a subsequent appeal, 10 App. Div. 626) ; we think that that case is clearly distinguishable. It appeared upon the first appeal (78 Hun, 181) that the plaintiff was driving along a public road when she saw a pair of the defendant's horses, in charge of a boy, coming toward her. The boy was riding one horse bareback and leading the other by a halter. The horses were prancing and plunging about. As the plaintiff turned out to the right, leaving plenty of room for the horses to pass her, the boy, instead of turning out of the traveled road, or stopping or attempting to stop the horses, took them sufficiently near to plaintiff to cause the accident, and then, when just abreast of the plaintiff, jerked or pulled upon the halter of the led horse, causing the horse to swerve across the road and back into plaintiff's wagon, thereby

throwing her out of the wagon and injuring her. There was a conflict in the testimony as to whether or not the defendant's horses were misbehaving before the collision, to such an extent that it was negligent to take them near the plaintiff's wagon, and the court held that there was presented a proper question to be submitted to the jury. Here the ground of recovery was clearly put upon the negligence of the defendant's servants in managing the horses so that they were allowed to come near the plaintiff's wagon. On the second appeal (10 App. Div. 626) Mr. Justice PRATT's opinion, saying: "We think it is too clear to require extended discussion that one aspect of the case presented a question of negligence for the jury. If the horses of the defendant were prancing across the road before the defendant's servant met the plaintiff's vehicle, the jury might well have found that the defendant's driver should have passed plaintiff's vehicle at a distance sufficiently great to avoid any chance of the led horse colliding with the vehicle. * * * When the plaintiff saw the horses approaching she sought to escape an accident by driving along the extreme right of the highway. Had the defendant's servant taken the same precaution and gone well to his side of the road, which was clear of obstruction, the accident would not have happened," was approved and the verdict for the plaintiff upheld upon the finding of the jury that there was negligence in this particular. In the case at bar the horse was proceeding quietly along the road until quite close to the plaintiff's wagon where the plaintiff was standing, when he was suddenly frightened by the contact of the wagon, and in consequence thereof, and while the defendant's agent was doing his utmost to quiet and control him, he backed into the plaintiff.

The case of *Grinnell* v. *Taylor* (85 Hun, 90), relied upon by the plaintiff, is also distinguishable. In that case the plaintiff was walking along a sidewalk in the street in a village and the defendant was walking on the outer edge of the sidewalk leading a horse. The horse was playing, prancing and rearing, and occasionally stepping upon the sidewalk. When the plaintiff perceived the action of the horse and appreciated the danger she was in she stepped off the walk into a yard away from the defendant when the horse kicked her. There was an ordinance of the village which prohibited a person from riding horseback, or leading or driving any horse on any of

the sidewalks in the village ; and it was held that there was a question for the jury as to the negligence of the defendant in managing his horse on the occasion. In this case the defendant was violating no ordinance, but the horses were proceeding along the street in what appears to have been a proper way. The rule applicable in cases of this character is thus stated in *Cadwell* v. *Arnheim* (152 N. Y. 189) : " The legal duty owing by the defendant to the plaintiff was that his coachman should be competent and should, to the best of his ability, so manage his horses, while upon the public highway, as to prevent them from being the cause of any injury to those rightfully there. Incompetency, due to the want of experience, or to other causes affecting the personality of the driver ; or recklessness in driving, whether in maintaining an improper rate of speed, or in failure to exercise proper skill and vigilance ; or the use of horses known to be vicious and unreliable in harness; these, and possibly other conditions should ordinarily exist in order to predicate negligence of one driving upon the public way." (*Benoit* v. *Troy & Lansingburgh R. R. Co.*, 154 N. Y. 223.) There was no evidence to justify a finding that the defendant was negligent, and the complaint should have been dismissed.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Van Brunt, P. J., and McLaughlin, J., concurred ; Patterson, and O'Brien, JJ., dissented.

O'Brien, J. (dissenting):

I think the facts bring this case within the principle laid down in *Crozier* v. *Read* (78 Hun, 181 ; 10 App. Div. 626), and *Grinnell* v. *Taylor* (85 Hun, 90). I, therefore, dissent.

Judgment reversed, new trial ordered, costs to appellant to abide event.